**Charlie COX, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 16, 1973.

throat and a bruised head. Bryant was barely alive. Burdine started to go into the house when he was struck in the leg by a bullet fired from inside the house. Burdine then went to another neighbor's home where the sheriff was called by telephone. Burdine went back to Bryant and soon the officers arrived. Bryant died shortly thereafter. Burdine apprised the police that Bryant's blue-and-white Ford was missing. About 3 a. m. Cox, while driving the deceased's blue-and-white Ford, was arrested on a charge of driving while intoxicated. Two other boys were in the car with him. Cox was given a breathalyzer test which showed that the blood-alcohol count was .015. At the trial the officer who administered the test testified that a person who has a count of .015 is presumed to be under the influence of alcohol insofar as driving is concerned. At the police station, after being given the "Miranda warnings", Cox told of his having killed the deceased. He did not sign a statement, but one officer testified as follows:

H. K. Spear, Frederick G. Neikirk, Somerset, for appellant.

Ed W. Hancock, Atty. Gen., John C. Ryan, Special Asst. Atty. Gen., Frankfort, for appellee.

GARDNER, Commissioner.

Charlie Cox was convicted of the murder of Claude Bryant and sentenced to life imprisonment. Cox's main grounds for reversal are that his alleged confession was erroneously admitted as evidence and the court failed to give a necessary instruction. We affirm.

Rupert Burdine, a neighbor of the deceased, went to Bryant's home to seek assistance in finding out who had broken into his (Burdine's) trailer. He reached Bryant's house between 1:30 and 2 o'clock in the morning. Burdine discovered Bryant lying outside his house with a cut

"In questioning the defendant he advised in essence that he had gone to the Bryant residence, called Mr. Bryant outside, when he stepped outside he grabbed him around the neck and cut his throat with a pocket knife, he then went inside the building, brought a sword back outside and struck him with it and then was in the process of going through the interior of the building when he heard a noise at the rear door, he stated that he thought someone was breaking in and at this time he shot through the door, shortly thereafter he completed what he was doing, took some weapons from the interior of the house the keys and some beer and took the vehicle belonging to Mr. Bryant and drove away with it, he advised that he sold the weapons to a subject at Tateville, and then he went to Burnside where he contacted a night watchman and swapped some beer with him, he then came on to Somerset and was subsequently arrested."

The circuit court conducted a hearing out of the presence of the jury to determine if the out-of-court confession was voluntarily and understandingly made. It was developed that Cox was 19 years of age and mentally retarded. According to David J. Wright, Jr., Ph.D., a clinical psychologist, Cox had the mental ability of an eight or nine-year-old child, while Dr. M. S. Akaydin, a psychiatrist, was of the opinion the intelligence level of Cox was equal to that of an eleven or twelve-year-old child.

Some of the observations and findings of Dr. Wright were: Cox does not have a good appreciation of the effect of his present conduct on his future. He is quite suggestible. He is able to make judgments but the judgments are poor. He is able to differentiate between right and wrong. Dr. Wright was able to communicate effectively with him. Cox "would only have a very vague idea of what he was being told * * * I am sure he is not of such a mentality where he could understand such as desire an attorney * * * I think if you said want an attorney he would understand, but 'right to an attorney', it would be borderline". Cox is open and frank and unlikely to concoct a story. Drinking would affect his ability to understand the "Miranda warnings".

Dr. Akaydin diagnosed Cox's condition as "Mental retardation (idiopathic), mild to moderate with behavorial reaction (antisociopathic behavior) aggravated with excessive use of alcohol. This diagnosis should be confirmed or ruled out by a full psychological evaluation. This man is mentally competent to handle his own financial affairs and take care of his immediate needs". Dr. Akaydin testified that Cox knew right from wrong to the extent that when asked if stealing and killing people were right or wrong he answered, "wrong". He answered that laws are to protect people.

At the hearing Cox testified that from 4 o'clock in the afternoon until 3 o'clock the next morning when he was arrested he was continuously drinking beer and whiskey to such an extent that he did not remember picking up the two boys that were with him when he was arrested. He said he did not remember making any statement to the police officers.

On the other hand, the officers testified in chambers that while Cox was obviously drinking, it was not to the extent of preventing his knowing what he was doing. They stated that he was informed of his constitutional rights, which he seemed to understand. He made his statements voluntarily and there was no pressure exerted on him or inducement relied on to obtain the confession.

■ After the extensive hearing the trial court concluded that the confession was voluntarily and understandingly made. Since it cannot be said that the trial court's ruling was clearly erroneous, it will not be disturbed. Tarrence v. Commonwealth, Ky., 265 S.W.2d 52 (1953); Smith v. Commonwealth, Ky., 366 S.W.2d 902 (1963); Carson v. Commonwealth, Ky., 382 S.W.2d 85 (1964); Allee v. Commonwealth, Ky., 454 S.W.2d 336 (1970).

■■ Included in the instructions of the court were ones for murder, voluntary manslaughter and involuntary manslaughter in the first and second degrees. The court failed to instruct the jury as required by RCr 9.56 that if it had a reasonable doubt as to the degree of the offense which the defendant had committed, he should be convicted of the lower degree. We have held many times that failure to give that instruction is reversible error. See Turner v. Commonwealth, 267 Ky. 74, 101 S.W.2d 214 (1937); Pemberton v. Commonwealth, Ky., 253 S.W.2d 381 (1952); and Evans v. Commonwealth, Ky., 474 S.W.2d 370 (1971). It is well established, however, that if the evidence points only to the conclusion that the accused is guilty of but one offense, it is not necessary or proper to give instructions embracing lower degrees. Higgs v. Commonwealth, 255 Ky. 547, 75 S.W.2d 21 (1934); Thorpe v. Com-

monwealth, 301 Ky. 541, 191 S.W.2d 572 (1945); Brown v. Commonwealth, Ky., 275 S.W.2d 928 (1955). It follows that in such instances it would not be necessary or proper to give the instruction relative to finding the accused guilty of the lower degree.

■ It is our opinion that there was no evidence even suggesting that Cox was guilty of any offense other than murder. There was no evidence of a struggle; no evidence of self-defense; no evidence that the killing was done in sudden heat of passion, or that the wounds were unintentionally or accidentally inflicted. According to Cox's confession, he called the victim out of the house, deliberately cut his throat and later struck him on the head with a sword. It is argued that there was evidence of Cox's drinking sufficient to prevent Cox from having killed with malice aforethought. We have searched the record and do not find evidence of any intoxication at the time of the commission of the offense. Cox testified in chambers that he was drinking heavily during the crucial time, but that testimony was not before the jury. There was evidence of his drinking at 3 a. m., the time of his arrest, but that was at least an hour after the offense. The victim was discovered by Burdine sometime between 1:30 a. m. and 2 a. m. Both Cox's mother and sister-in-law testified that they had talked with him at 1 a. m. and he was not drinking at that time. There was no evidence, therefore, to justify the giving of the lower-degree instruction. In its memorandum in ruling on the motion for a new trial, the circuit court recognized its error in giving instructions of the various offenses and concluded, as we do, that the giving of the needless instructions on the various offenses did not require the additional instruction that if the jury found Cox guilty of one of the offenses but had a reasonable doubt as to which one, it should find him guilty of the lower degree.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.