Robert Clayton WISEMAN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

June 12, 1979.

Rehearing Denied Oct. 30, 1979.

Jack E. Farley, Public Advocate, Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Robert Clayton Wiseman was indicted by the Boyd County Grand Jury for the murder of his wife, Gloria Wiseman. KRS 435.010. The crime took place in the early morning hours of March 10, 1974, at the Western Hills Motor Lodge, in Ashland, Kentucky. The police responded to a call from the motel desk clerk and found the appellant clad merely in his underwear, scuffling on the balcony with another guest of the lodge. After they subdued the appellant, they entered his motel room and discovered Mrs. Wiseman's severely beaten body. Death was attributed to asphyxiation due to aspiration of blood in the trachea and bronchial tubes.

In October 1975 the appellant, with paid counsel representing him, was first tried and convicted of murder. The trial court, however, granted a new trial after determining that the instruction to the jury on the penalty for murder was prejudicially erroneous. The second trial commenced on June 6, 1978. The jury found the appellant guilty of voluntary manslaughter and fixed his punishment at 21 years in prison. Hence, this appeal.

The appellant argues that the trial court erred in not directing a verdict of not guilty at the conclusion of the trial for failure of the Commonwealth to rebut appellant's evidence that at the time of the commission of the offense he allegedly lacked necessary mental capacity. The appellant's defense of insanity is statutory. KRS 504.020 provides as follows:

"(1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(2) As used in this chapter, the term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(3) A defendant may prove mental disease or defect, as used in this section, in exculpation of criminal conduct."

At the time the appellant killed his wife he was 24 years of age and she was 21. He was a teacher and athletic coach in the Greenup County High School. On the fateful night Robert and Gloria attended a high school district basketball tournament, in company with several of their friends. Following the game they were invited to, and did attend a party at the apartment of their neighbor, Perry Joe Madden, who lived beneath their apartment. Several people were in attendance; some were listening to music, others were playing cards, and others were watching television. The appellant was playing cards and Gloria was sitting on a couch in an adjoining room. Madden came by and sat down beside Gloria and they engaged in conversation. After

awhile the appellant entered the room and asked what they were doing. The evidence does not disclose that Gloria and Madden were doing anything other than talking; nevertheless, the appellant, in what is described as a serious tone of voice, said, "Perry, I'm sorry but I'm the jealous type." Immediately thereafter, the appellant and his wife left the party and returned to their apartment. Later in the evening they drove to the Western Hills Motor Lodge, where they checked in between 11:00 p. m. and 1:00 a. m. The killing was placed at about 3:00 a. m. Madden testified that the appellant demonstrated no bizarre behavior at the party, other than his statement of jealousy.

The night clerk at the motor lodge testified that he detected no unusual behavior on the part of the appellant when he checked in for a room. He stated, however, that sometime later he heard someone yelling "Oh Lord" and "Oh God," so he went outside to see what was happening. He found the appellant on the balcony. He immediately called the police, who responded promptly. Four officers subdued the appellant, handcuffed him, and placed him in the police cruiser. While on the way to jail the appellant beat his head against the wire screen separating the front and back seats of the cruiser. After arriving at the police station the appellant was placed in a strait jacket, appearing wild and hysterical.

Three psychiatrists testified that the appellant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Dr. Francisco Montero, a forensic psychiatrist at Central State Hospital, where appellant was an inpatient from March 28, 1974, to April 25, 1974, diagnosed appellant's condition as acute schizophrenia, active at the time of the killing but in such remission at the time of his examination as to permit him to stand trial. Dr. Montero described appellant's symptoms as evidencing religious delusions as to God, evil and the devil, severe depression, crying; mental confusion and potential explosive behavior. Dr. John Thiel and Dr. John A. Schremly both examined the appellant and concurred in the findings and diagnosis of Dr. Montero. The appellant's father stated that the appellant demonstrated psychotic tendencies in 1968 and was hospitalized for six to eight weeks. He further testified that the appellant's mother had suffered from some mental illness. The appellant did not testify.

At the conclusion of all of the evidence for both the Commonwealth and the appellant, the appellant moved the court to direct a verdict of not guilty because the Commonwealth failed to rebut clear and convincing evidence that the appellant, at the time of the killing, did not have substantial capacity to appreciate the criminal nature of the act and that he did not have substantial capacity to conform his conduct to the requirements of law. The medical testimony, without equivocation, portrays the appellant as a victim of mental disorder or defect. It is without cavil that the appellant, at the time he killed his wife, was not acting in a normal manner. The status of the law in Kentucky as to the propriety of submitting an issue of insanity to the jury is clearly stated in *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977), wherein this court said:

> ". . . Although the foregoing discussion disposes of this allegation of error, we feel compelled to point out for the benefit of counsel that the introduction of proof of insanity by a defendant does not place a burden on the Commonwealth to prove him sane; rather, it entitles the defendant to an instruction to the jury that they may find him not guilty by reason of insanity, and thus properly makes the issue of insanity a matter for the jury's determination."

As to the quality of the testimony of the expert witnesses, in *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947), we held that even though all expert witnesses testify favorably for the accused as to his insanity, where there is any evidence indicative of his sanity, there is presented an issue of fact for a jury determination. It is not necessary that there be a battle

between the experts as to the sanity of the accused. Oftentimes, lay witnesses testifying as to the customary conduct of an accused more nearly reflect his mental capacity than the high sounding names tagged to imaginary self-induced complaints.

A review of the record clearly demonstrates that the jury did have sufficient basis for finding the appellant was sane at the time of the commission of the crime. The jury determination cannot be held to be clearly unreasonable; consequently, it must stand. *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

■ Next, the appellant charges that he was denied a fair trial when the trial judge included in the instructions to the jury on insanity the statement that the law presumes every man sane. This issue was not brought to the attention of the trial judge for consideration. The trial court not having been afforded the opportunity to consider this issue, it may not be considered by this court. *Hamilton v. Commonwealth*, Ky., 580 S.W.2d 208 (1979).

■ The appellant argues that he was denied a fair trial when the trial judge failed to instruct the jury that if it had a reasonable doubt as to the degree of the offense, it should find the appellant guilty of the lower degree. RCr 9.56. The appellant was indicted and tried for the offense of willful murder. At the conclusion of the case, the trial judge instructed the jury on the offenses of murder and voluntary and involuntary manslaughter. Further, the judge instructed the jury that if upon the whole case it had a reasonable doubt as to the appellant's guilt, it should find him not guilty. Counsel for appellant requested a reasonable-doubt instruction as to the degree of the offense and tendered an instruction in that respect. In *Cox v. Commonwealth*, Ky., 491 S.W.2d 834 (1973), this court said:

"Included in the instructions of the court were ones for murder, voluntary manslaughter and involuntary manslaughter in the first and second degrees. The court failed to instruct the jury as required by RCr 9.56 that if it had a

reasonable doubt as to the degree of the offense which the defendant had committed, he should be convicted of the lower degree. We have held many times that failure to give that instruction is reversible error. . . . It is well established, however, that if the evidence points only to the conclusion that the accused is guilty of but one offense, it is not necessary or proper to give instructions embracing lower degrees. . . . It follows that in such instances it would not be necessary or proper to give the instruction relative to finding the accused guilty of the lower degree."

It is the appellant's position that the jury should have been permitted to find him guilty of involuntary manslaughter, which is a degree of voluntary manslaughter. Bearing in mind that this case was tried before the criminal code went into effect, we turn our attention to the definitions of voluntary and involuntary manslaughter as understood to be at that time. In *Rice v. Commonwealth*, Ky., 472 S.W.2d 512 (1971), voluntary manslaughter is defined as follows:

"The offense of voluntary manslaughter is 'the unlawful, willful, and felonious killing, without previous malice, of another, in a sudden affray or in sudden heat and passion, not in the necessary or apparently necessary self-defense of the slayer.' *Commonwealth v. Mosser*, 133 Ky. 609, 118 S.W. 915. See Roberson's New Kentucky Criminal Law and Procedure, 2d Edition, Section 372, page 495."

KRS 435.022, in effect at the time of the commission of the crime, defined involuntary manslaughter as follows:

"(2) Any person who causes the death of a human being by reckless conduct according to the standard of conduct of a reasonable man under the circumstances shall be guilty of involuntary manslaughter in the second degree and shall be imprisoned in the county jail for a term not exceeding twelve (12) months or fined a sum not exceeding five thousand dollars ($5,000) or both."

The evidence presented at the trial was not sufficient or adequate to support a conviction of involuntary manslaughter. Therefore, it was not necessary to instruct the jury that the appellant could be found guilty of that degree of manslaughter.

■ The appellant's fourth allegation of error is that he was denied due process of law by the trial court's refusal to give the defense-tendered instruction on the presumption of innocence. At the close of all of the evidence, appellant's trial counsel moved the court to instruct the jury on the presumption of innocence and tendered the following instruction:

"The accused defendant is presumed to be innocent until proven guilty. This presumption continues throughout the trial. This presumption requires the prosecution to prove guilt beyond a reasonable doubt. If the prosecution does not prove guilt beyond a reasonable doubt, then by operation of the presumption of innocence, the defendant must be found (not) guilty."

The trial judge refused to give this instruction and instead instructed the jury as follows:

"The defendant Robert Clayton Wiseman, is presumed innocent until proven guilty beyond a reasonable doubt."

In *Edwards v. Commonwealth*, Ky., 573 S.W.2d 640 (1978), complaint was made that the presumption-of-innocence instruction was not given. The trial court, however, had instructed the jury that "The defendant is presumed to be innocent of the charge herein until his guilt has been established by the proof beyond a reasonable doubt. . . ." This instruction is almost, word for word, identical to the instruction given in the subject action. *Edwards* is dispositive of the issue in this case. The presumption-of-innocence instruction given in this action was adequate.

■ Appellant argues that the trial court erroneously instructed the jury on involuntary manslaughter. The involuntary-manslaughter instruction given by the court was substantially the same as one tendered by appellant's counsel, differing only in phraseology and not in substance. Instructions in a criminal prosecution must have a source within the framework of the evidence produced at the trial. Both the appellant and the Commonwealth's Attorney objected to the involuntary-manslaughter instruction given by the court; the appellant on the ground that it did not correctly define involuntary manslaughter and the Commonwealth's Attorney on the charge that there was no evidence which would justify an involuntary-manslaughter instruction. The court instructed that,

"If the jury believes from the evidence in this case, beyond a reasonable doubt, that in this county and before the finding of the indictment herein that the defendant, Robert Clayton Wiseman, struck Gloria Wiseman with his fists and hands, if he did strike her, and that said striking was not reasonably calculated to produce death or that said striking, if any, was without intent on the part of the defendant to produce fatal injury and you further believe from the evidence, beyond a reasonable doubt, that the killing of Gloria Wiseman resulted from striking her by the defendant with his fists and hands and that said striking occurred in this county and within twelve months before the finding of the indictment herein, you will find the defendant guilty of involuntary manslaughter and fix his punishment at any sum not exceeding $5,000.00, in your discretion, or at confinement in the county jail at a period of time in your discretion not exceeding one year, or both, fine and imprisonment of him."

Stanley's Instructions to Juries, Vol. 3, Sec. 876. These instructions adequately defined the offense of involuntary manslaughter.

The jury found the appellant guilty of voluntary manslaughter and fixed his punishment at the maximum of 21 years. The jury could have found the appellant guilty of voluntary manslaughter and fixed his punishment at two years, which is the minimum. Had the jury found the appellant guilty of involuntary manslaughter as instructed by the court, it could have fixed his

punishment at a fine of not to exceed $5,000 or at imprisonment for a period of one year or by both fine and imprisonment. The verdict returned by the jury fixed the appellant's penalty at imprisonment for a period of time greater than the maximum authorized by the involuntary-manslaughter instruction. This manifested an affirmative action on the part of the jury to not find the appellant guilty of the lesser offense, but with a positive purpose of finding him guilty of the greater offense and fixing his punishment at the maximum provided by law. This action on the part of the jury in not finding the appellant guilty under the involuntary-manslaughter instruction fails to manifest any prejudice. *Shanks v. Commonwealth*, Ky., 390 S.W.2d 888 (1965).

The simple answer to appellant's argument that the court erred in instructing the jury on involuntary manslaughter is that the movant, in the first place, was not entitled to an instruction on involuntary manslaughter. In the second place, movant was not convicted under the involuntary manslaughter instruction and, thirdly, it is irrelevant since movant was convicted of the higher degree of the offense of manslaughter.

■ Finally, the appellant argues that his motion for a continuance should have been granted, and not having been granted, he contends that he was denied a fair trial. The motion for a continuance was made on June 6, 1978, immediately before the case was called for trial. Counsel contends that his personal anxiety over the uncertainty of his employment as Public Defender for Boyd County interfered with his ability to try the case proficiently. Although the Commonwealth's Attorney did not object to the continuance, the trial judge refused it. He did, however, recess the trial until the following day. On June 7, 1978, counsel for appellant filed a written motion for a continuance, accompanying it with his personal affidavit in which he stated that his uncertain tenure as Public Defender for Boyd County would deprive the appellant of effective assistance of counsel. RCr 9.04 pro-

vides that "The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial." This motion also was denied.

In spite of counsel's apprehension over his representation of the appellant, the record reflects that he did a good job, even though not securing an acquittal. There was no abuse of the trial judge's discretion in refusing to grant appellant a continuance.

The judgment is affirmed.

PALMORE, C. J., and CLAYTON, REED and STEPHENSON, JJ., concur.

LUKOWSKY, J., files a dissent, in which AKER, J., joins.

LUKOWSKY, Justice, dissenting.

Insanity at the time of the commission of an offense is ordinarily a question of fact for the jury. However, in the evidentiary fraternal twin of this case we held that a jury which returned a verdict of guilty arbitrarily disregarded substantial evidence of insanity and that such a verdict must be set aside as flagrantly against the evidence. *Deegans v. Commonwealth*, 228 Ky. 664, 15 S.W.2d 441 (1929).

Here as there the evidence is all one way and to the effect that the accused was insane. There is no room for reasonable men to differ. The conclusion of insanity is compelled. Any other result is arbitrary and prohibited by Ky.Const. sec. 2 (1891).

The motion for a directed verdict of acquittal should have been granted by the trial judge. *State v. Brown*, 36 Utah 46, 102 P. 641, 645–646 (1909). I would reverse the judgment and remand the case with directions to do so.

I am authorized to state that AKER, J., joins in this dissent.