Rodney ALEXANDER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Eric Lamont HYDE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 87–SC–81–MR, 87–SC–82–MR.

Supreme Court of Kentucky.

Sept. 8, 1988.

Michael A. Wright, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant Alexander.

Robert Cetrulo, Appellate Public Advocate, Covington, for appellant Hyde.

Frederic Cowan, Atty. Gen., Frankfort, Carol C. Ullerich, Asst. Atty. Gen., for appellee.

GANT, Justice.

Appellants herein were convicted of wanton murder and first degree wanton endan-

germent as the result of certain incidents which occurred at the Baby Grand Lounge in Louisville. They were sentenced to life imprisonment and one year, respectively, the sentences to be served concurrently.

Appellants had been in the lounge earlier on January 26, 1986, with a friend by the name of McDonald, who was apparently a cousin of at least one of the appellants. McDonald had started a fight, was subdued by employees of the lounge, and was subsequently arrested. Appellants and others sought unsuccessfully to dissuade the officers from making the arrest. Later in the evening, appellant Hyde secured a shotgun, and the group drove back to the lounge. Appellant Alexander then fired a shotgun blast through the front windows of the lounge, which lounge was occupied by at least a dozen people at the time. The shot shattered two windows, penetrated a metal sign, and struck Michael Green, an employee of the lounge, killing him by virtue of a shot to the head.

The sole issue on this appeal is whether the single act of firing the shotgun into the building can be the basis of a conviction for both wanton murder and for wanton endangerment in the first degree. Appellants argue that such convictions violate the appellants' constitutional and statutory rights against double jeopardy under Amendment V of the Constitution of the United States, § 13 of the Constitution of Kentucky, and the statutory prohibition under KRS 505.020 that "... a defendant ... may not be ... convicted of more than one offense when one offense is included in the other ..."

Appellants' arguments ignore the facts of this case. Although it is true that a single course of conduct is involved and appellants could not have been convicted of both offenses against Michael Green, here there was more than one victim. KRS 505.020 is a codification of the rule set down in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932), which case states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

KRS 505.020(1) provides: "When a single course of conduct of a defendant may establish the commission of more than one offense, he may be prosecuted for each such offense."

Thus, neither *Blockburger* nor the statute is violated when the single act or course of conduct constitutes an offense against more than one person. If the single act had caused the death of two persons, the appellants could certainly have been convicted of two murders. The instruction herein relating to the wanton endangerment count authorized the jury to find the appellants guilty if their act posed a substantial danger of death to a person or persons "exclusive of Michael Green." The evidence was sufficient to justify a verdict of guilty under these instructions.

The Jefferson Circuit Court is affirmed.

All concur except LEIBSON, J., who dissents and files herewith a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. The Majority Opinion sanctions multiple prosecutions for a single offense.

A single act of wanton endangerment may endanger one or many, but it is only one offense. If the result of the act is death or injury, the act of wanton endangerment *merges* with the greater offense. The single shot in this case endangered a number of people, including the murder victim. Number of murders is measurable in terms of number of victims because both the act and the result are being sanctioned. However, with wanton endangerment the criminal code intended to sanction the act when no harm resulted, so the number of offenses can multiply *only* by the number of acts endangering people.

The Penal Code was designed all of one piece. The place occupied in the Code by Wanton Endangerment is as follows:

> The Penal Code fleshes out the pattern of assault offenses with a new concept: wanton endangerment. This is designed to provide criminal sanctions when an actor has engaged in wanton conduct but has caused no injury. Brickey, *Kentucky Criminal Act*, § 9.07 (1974).

> The conduct that is punishable under this offense would be sufficient to constitute assault (as that offense is defined in the Penal Code) if a physical injury has resulted from the conduct. Since the failure of the defendant in fact to cause injury is fortuitous, it is deemed by the Code only to affect the extent of his sanction. Palmore, *Kentucky Instructions to Juries*, Vol. 1 § 2.21 (1975).

The Commentary to KRS 508.060, Wanton endangerment in the first degree, explains:

[Wanton endangerment] can best be described by use of this hypothetical: D, with no intent to kill or injure but with an awareness of the risk involved, shoots a gun into an occupied building, thereby consciously disregarding the risk of death or injury to its occupants. If someone is killed as a consequence of this act, D has committed murder if the triers of fact determine that the circumstances under which he acted manifest extreme indifference to human life (KRS 507.020) or manslaughter in the second degree if the triers find someone is seriously injured as a consequence of this act[.] D has committed assault in the first degree if the circumstances under which he acted manifest an extreme indifference to human life (KRS 508.010) or assault in the second degree if they manifest no such indifference (KRS 508.-020). If D's act causes neither [none] of these consequences, he has committed the offense of wanton endangerment under KRS 508.060 or 508.070.

The wanton endangerment offense was structured to fill a void in the Penal Code by sanctioning conduct which would otherwise go unpunished, where the actor engaged in wanton misconduct that did not result in injury or death or accompany some other punishable offense such as robbery. When the act of wanton endangerment has such result, it serve *no purpose* in the structure of the penal structure and simply merges with the greater offense which it caused.

In *Marshall v. Commonwealth,* Ky., 625 S.W.2d 581 (1982), we recognized and applied this principle. We held a conviction of first degree robbery and first degree wanton endangerment violated the constitutional and statutory prohibitions against double jeopardy. In *Marshall,* the defendant pointed a pistol at several employees and customers while taking money and narcotics. We stated:

This was all one act or transaction—the perpetration of a robbery. The act of pointing a gun at certain persons prior to the seizure of the loot which gave rise to the wanton endangerment charge was in reality a part of the elements of the robbery act. It was an included offense within the purview of KRS 505.020. The two acts merged, and under the rationale of *Sherley v. Commonwealth,* Ky., 558 S.W.2d 615 (1977), followed in *Whorton v. Commonwealth,* Ky., 570 S.W.2d 627 (1978), the first degree wanton endangerment charge must be dismissed. *Marshall, supra* at 582–83.

The appellants shot a single shotgun blast into the occupied lounge. If no one had been killed or injured, the appellants would have committed one offense of wanton endangerment. Because someone was killed as a consequence of this act, however, the appellants committed the offense of wanton murder.

Merger occurs when the same evidence proves both a lesser included offense and an element of the greater offense. This occurred here and should have prohibited conviction of both offenses. The act of firing the shotgun proving the wanton murder was the same act used to prove wanton endangerment. The conviction for wanton endangerment should be reversed.