Jonathan PORT, Appellant.

v.

COMMONWEALTH of Kentucky, Appellee.

No. 93–SC–460–MR.

Supreme Court of Kentucky.

July 6, 1995.

As Modified July 10, 1995.

Rehearing Denied Oct. 19, 1995.

Julie Namkin, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Frankfort, Cindy A. Goldhill, Karen Quinn, Asst. Attys. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant, Jonathan Port, was convicted in Warren Circuit Court of intentional murder but mentally ill and sentenced to life, criminal attempt to commit murder but mentally ill and sentenced to twenty years, and wanton endangerment in the first degree but mentally ill and sentenced to five years. The indeterminate sentences are to run concurrently with the life sentence. Port appeals to this Court as a matter of right.

Appellant entered Stel's Diner in Smith's Grove, Kentucky and fired two shots at customers sitting at a table in the restaurant. One shot hit Robert Roberts in the abdomen. The other shot hit William Ratliff on the back of his left shoulder, perforated his lung, and travelled through the thoracic cavity. William Ratliff died as a result of his injuries.

Some of the other customers at Stel's Diner wrestled with Mr. Port and subdued him. When Sheriff Eadens arrived, he found Mr. Port sitting in a chair. He handcuffed Mr. Port and took him outside of the restaurant. When Mr. Eadens asked Mr. Port for identification, he stated that "he knew his rights and that he didn't have to give Eadens his identification and that he wanted an attorney."

Appellant first claims error in that the trial court failed to direct a verdict of not guilty by reason of insanity. The issue was pre-

served by appellant's motion for a directed verdict of acquittal.

One week after the incident a psychiatrist examined Mr. Port and stated in his report that Mr. Port "has clearly been psychotic with a paranoid disorder for many months." At trial, another psychiatrist testified that Mr. Port was suffering from paranoid schizophrenia and that at the time of the incident Mr. Port "lacked the substantial capacity to conform his conduct to the requirements of the law." On cross-examination the prosecutor asked how could Mr. Port know enough to tell the policeman within minutes of the shooting that he knew his rights and that he wanted an attorney. The prosecutor also elicited from Mr. Port on cross that he had been treated for paranoid schizophrenia in 1973, 1982, and 1988.

Appellant asserts that the prosecutor improperly relied on Mr. Port's request for counsel immediately following the incident as evidence of his sanity. Appellant further suggests that this is the only evidence presented on the record to rebut the defendant's contention that he was insane at the time of the incident, and, therefore under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), because "no rational trier of fact could have found proof of [Mr. Port's sanity] beyond a reasonable doubt," he was entitled to a directed verdict of acquittal. *Id.* at 324, 99 S.Ct. at 2791–92.

■ In reviewing *Jackson,* we conclude that appellant was not denied his due process rights as he was not "convicted upon inadequate evidence." *Jackson,* 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The rule of law set forth in that case actually reads, "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of *guilt* beyond a reasonable doubt," *not* proof of *sanity* as suggested by appellant. *Id.* (emphasis added). This distinction is an important one as it reflects who has the burden of proof on the insanity issue. Since appellant has offered up insanity as a defense to the charge of intentional murder, under the law of this Commonwealth, he bears the risk of not persuading the factfinder that he was

in fact insane at the time of the incident. KRS 500.070(3); *Edwards v. Commonwealth,* Ky., 554 S.W.2d 380 (1977).

The appellant does, however, raise an interesting question as to what is the required standard of measurement in determining whether the case should be submitted to the jury whether the appellant is entitled to a directed verdict. The relevant determining factor is not whether there needed to be expert testimony presented in rebuttal. "It is not necessary that there be a battle between the experts as to the sanity of the accused." *Wiseman v. Commonwealth,* Ky., 587 S.W.2d 235, 237–238 (1979). Rather the issue we address is whether the evidence presented on the record, inclusive or exclusive of expert testimony, was sufficient to present a jury issue, thereby defeating appellant's directed verdict motion.

■ This Court has previously announced this standard in our opinion in *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984), where we stated when "[i]t would not be clearly unreasonable for a jury to find against the defendant on the issue of insanity," it may be submitted to the jury. The applicable standard in this case, therefore, is whether it would be clearly unreasonable for a jury to find against the defendant on the issue of insanity. This standard is further reflected in this Court's holding in *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977) and reiterated in *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983), which states it as follows:

> If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal.

■ At oral argument, the Commonwealth suggested that this Court's holding in *Hayes v. Commonwealth,* Ky., 625 S.W.2d 583 (1981), enables the issue of insanity to be submitted to the jury because of our statement that "where there is *any* evidence indicative of his sanity, there is presented an issue of fact for a jury determination." *Id.* at 585 (emphasis added). In isolated context, this statement could mistakenly be interpreted to lessen the standard required, in this

particular circumstance, to deny a motion for a directed verdict of acquittal. However, the issue in *Wiseman*, to which the *Hayes* opinion refers, was determining the need for expert versus lay testimony in supporting a rebuttal of insanity. The use of "any" evidence refers to the acceptable usage of lay testimony to rebut the testimony of experts on the issue of insanity. The mere presence of any evidence does not necessarily enable the issue to be submitted for jury determination. At this point, the evidence that has been presented must still, "when taken as a whole," meet the sufficiency requirements set forth in *Ice, Trowel,* and *Sawhill.*

■ In evaluating the evidence in *Ice*, we considered "the circumstances preceding the commission of the crime, the evidence regarding the circumstances surrounding its occurrence, and the activities of the accused thereafter, when taken as a whole. . . ." *Id.* at 678. The evidence presented to the jury clearly indicated that appellant had committed the acts in question. Evidence introduced also included testimony from patrons at Stel's Diner that during the shootings, the appellant appeared to be in control. The police testified that he acted rationally when he was apprehended by them, and the appellant himself testified that he chose to shoot at the patrons of the diner because they were the cause of his frustration. Taking this evidence as a whole, it was not clearly unreasonable for any juror to find the defendant was not insane at the time of the incident.

■ Appellant's second contention of error is unpreserved. Appellant asserts that review under RCr 10.26 is necessary to prevent a substantial risk of a miscarriage of justice when the Commonwealth used appellant's invocation of his right to counsel as evidence of his sanity. Appellant cites to the U.S. Supreme Court's opinion in *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), where they held it was fundamentally unfair to use the defendant's post-arrest, post-*Miranda* warnings silence as evidence against him. In this case the evidence was used for the purpose of proving the appellant's sanity. Appellant concedes the record does not indicate he was read his *Miranda* rights by Sheriff Eadens. However-

er, he argues that since Mr. Port was in custody of the police, he must have been read his *Miranda* rights.

The Commonwealth maintains, on the other hand, that the request for counsel by Port was pre-*Miranda*, even though he was in the custody of the police. This argument relies on the premise that mere custody does not set into motion the need for the *Miranda* safeguards. Under the evidence maintained on the record, it is clear Port was not being subjected to custodial interrogation that would have required his having been Mirandized. Rather, he was only being asked for identification, which does not constitute custodial interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

Also, the rationale of the *Wainwright* holding rested upon the idea that it is unfair for a suspect to exercise his "right to remain silent" after being Mirandized and then have that silence used against him. This was not the situation in this case. According to the record, Port did not exercise his right to remain silent as a result of being told of his Miranda rights.

The U.S. Supreme Court reviewed a similar fact situation in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The prosecutor argued that the fact that the accused remained silent for two weeks after the crime, even though he claimed to have been acting in self-defense, indicated that self-defense was unlikely. The U.S. Supreme Court held that the use of this evidence to rebut the claim of self-defense was acceptable in that the accused was silent on his own accord and not as a result of any governmental action.

■ This Court has also commented upon the use of post-arrest silence for the purpose of impeaching a defendant's trial testimony, as was the case in *Jenkins* and is the case *sub judice*. *See, Green v. Commonwealth*, Ky., 815 S.W.2d 398, 400 (1991). In *Green* we distinguished between using the evidence to prove guilt as opposed to using it to impeach, noting that the latter is not an improper use. Because Port was not under

custodial interrogation at the time of his statement and since he was not exercising his right to remain silent as a result of being informed he could do so, we do not find this issue meets the requirements of review necessitated for unpreserved error under RCr 10.26.

■ The third ground for error presented by appellant is that the cross-examination of Dr. Deland, expert witness for the appellant, was improper. Appellant contends the prosecutor's questions were irrelevant and were only intended to "inflame [the jurors'] passions and fears." The questions at issue include asking the doctor first, "What percentage of paranoid schizophrenics kill people?" and second, "What kinds of killings are rational outside of war or police enforcement?" The appellant argues these questions concerning the rationale behind the shootings were "totally irrelevant [because] ... [they] needlessly and prejudicially allowed the jury an opportunity to draw irrelevant inferences," which warrants reversal under *Schaefer v. Comm.*, Ky., 622 S.W.2d 218, 219 (1981). The questions the appellant places at issue here do not address irrelevant issues. The questions, rather, address the basis of the expert's opinion. They address why the expert believed the appellant to be insane at the time of the incident. The witness answered that it was because the appellant was acting and thinking irrationally about the people of the town in which he lived. As a result, the Commonwealth attempted to define what the expert believed to be a rational killing. The Commonwealth's cross-examination was proper under KRE 703.

Appellant also argues the prosecutor elicited testimony from the appellant's expert witness about prior acts of violence by Port. This cross examination by the prosecutor went as follows:

Q. One of the factors which I think you testified to is the past history of the Appellant.

A. That is correct. That actually is the most important part of any evaluation.

Q. Can you tell us what type of past history you took on Mr. Port?

A. Complete employment history, social history, ... family history.

Q. Now his family history, he was married at one point?

A. Back when he was in his early twenties, in the Cincinnati area.

Q. Did you find any problems originating in Cincinnati?

A. Yes. At one point he was accused of harassing his wife or ex-wife and a protection order had to be issued.

Objection. Sustained.

Q. Doctor, without getting into any specific events or anything in Mr. Port's past whatsoever, have you as part of your opinion here today based it on any other psychological reports you have received on this past?

A. Yes, I have old medical records.

. . . .

Q. Up until this time, when he was in Smith's Grove he seemed to conform his conduct to the requirements of the law, you knew of no incidents in Smith's Grove where he did nothing wrong?

A. No, not specifically. I do know that shortly before this happened there was some kind of trouble down in Tennessee that was equally irrational but fortunately not as tragic.

■ The testimony elicited from the doctor does not, "in the abstract, impute the commission of unconnected crimes to the appellant." *Spirko v. Comm,* Ky., 480 S.W.2d 169 (1972). Furthermore, the testimony is directed at understanding the basis of the expert's opinion. The expert explicitly indicated that his assessment of the defendant's mental state at the time of the crime was based upon the defendant's past history. As a result, we do not find this testimony constitutes evidence of other crimes as anticipated under KRE 404(3)(b): "to show action in conformity therewith," rather it was evidence being used to understand a medical diagnosis.

■ The fourth argument presented by the appellant is that he was denied due process of law because no instruction was given pursuant to RCr 9.55 on the disposition of a

defendant if the jury returns a verdict of not guilty by reason of insanity or guilty but mentally ill. The appellant contends that even though no request for the instruction was made, once the issue was presented by the prosecutor in closing argument, the trial court was required to clarify the law. The appellant refers to the statements by the prosecutor that the issue to be decided by the jury was "whether he's guilty or he's not guilty. It's one or the other. He's either guilty or he's not guilty." The prosecutor also stated that "[y]ou have two options. To find this man guilty of murder or to excuse that murder...."

However, RCr 9.55 reads as follows:

"On request of the defendant in a trial by jury of the issue of absence of criminal responsibility for criminal conduct, the court shall instruct the jury at the guilt/innocence phase as to the dispositional provisions applicable to the defendant if the jury returns a verdict of not criminally responsible by reason of mental illness or retardation, or guilty but mentally ill."

This instruction at the time of this trial was only available *at the request of the defendant.* In reading this rule any other way, its intended role would be totally defeated. This rule is a matter of trial strategy, and the rule anticipates that it is a matter of the defense's choices in adopting that strategy. "A defendant cannot pursue one theory at the trial court level and another on the appellate review." *Commonwealth v. Duke,* Ky., 750 S.W.2d 432, 433 (1988).

■ The appellant argues as his fifth contention of error that the prosecutor made improper comments in his closing argument and that these comments rose to the level of prosecutorial misconduct. These statements include the prosecutor stating that "Dr. Deland is a doctor in a hospital where Mr. Port was for 15 months. We got the report back on March 5, 1993, and I guess I'm supposed to come up with a doctor like that to say—." Defense counsel's objection cut off the prosecutor's statement. Defense also argues that the prosecutor misstated the law in saying "the second instruction says not guilty by reason of insanity, and we heard self-defense and we heard several different things. But

the end result is all the same, he's not guilty." Appellant argues that this implies the jury only had two choices. Guilty or not guilty. This Court is not persuaded by either of these attempts to claim prosecutorial misconduct that warrants reversal. The first statement was never concluded, therefore, it is impossible for this court to determine what was going to be said. The second statement, when viewed in the context of the entire closing argument, does not constitute misconduct either. The closing argument included several references to the four possible verdicts in the case.

Appellant also argues as his sixth basis of error that the separation of witnesses rule was violated. He argues this violation occurred when the wife of the deceased victim was allowed to stay in the courtroom during the trial. He also argues that her testimony during the guilt phase of the trial was inadmissible.

RCr 9.48 states that:

"If either a defendant or the Commonwealth requests it, the judge *may* exclude from the hearing or trial any witness of the adverse party not at the time under examination, *so that he may not hear the testimony of the other witnesses.* This provision shall not apply to the parties to the proceeding." (emphasis added)

■ The wife's testimony was not being influenced by any other witnesses' testimony that she heard while in the courtroom. Her testimony was serving the purpose of "bringing to the attention of the jury that the victim was a living person, more than just a nameless void left somewhere on the face of the community." *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519. (1984). Furthermore, the separation of the witnesses is discretionary in nature as stated in the rule. As a result, we find no reason for reversal on these grounds.

Appellant's final contention of error is that the resulting verdict violated double jeopardy principles and is inconsistent with respect to the three charges.

■ Appellant argues that the jury's guilty verdicts on the three counts required

inconsistent mental states. He states that the first two convictions for attempted murder and intentional murder require a mental state of acting intentionally; whereas, the wanton endangerment verdict requires a finding of a mental state of acting wantonly.

Appellant directs this Court to the case of *Pace v. Commonwealth*, Ky., 636 S.W.2d 887 (1982), where we reversed and remanded for a new trial. In that case the defendant was convicted of second degree manslaughter, second-degree wanton assault and third degree wanton or reckless assault. These convictions arose from an incident where the defendant struck three brothers walking down a road by his car. One brother was killed and the other two were injured.

In that case, we found there to be, with respect to the mental state required for these convictions, "a logical inconsistency ... since the injury to all three victims occurred *simultaneously*." *Id.* (emphasis added.) The requirement of simultaneous injury is the distinguishing factor in the case *sub judice*. There were three independent acts occurring in Stel's Diner that gave rise to the three charges: the intentional killing of Mr. Ratliff, the intentional attempted killing of Bob Roberts, and the ensuing struggle with the patrons of the diner where Mr. Port was acting wantonly.

■■■ Appellant also argues that there is a double jeopardy violation in that out of a course of conduct on the part of Mr. Port, where only two shots were fired, he was charged and convicted of three offenses. Under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931), "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Each charge in this case required proof of an additional fact. The charge of murder contains two elements which are not necessary for proving a wanton endangerment charge. These are 1) the intent to cause the death of another and 2) causing the death of that person; whereas wanton endangerment requires the defendant to (1) act wantonly, (2) create a substantial danger of death or physical injury to another person (the other pa-

trons of the Stel's Diner) under (3) circumstances that manifest an extreme indifference to the value of human life. Furthermore, we have previously held that a defendant may be convicted of both murder and wanton endangerment so long as the acts are targeting different victims. *See Alexander v. Commonwealth*, Ky., 766 S.W.2d 631 (1988). The different victims on each of these offenses are 1) Mr. Ratliff, 2) Mr. Roberts, and 3) the other patrons at Stel's Diner.

■■■ Appellant also argues that the wanton endangerment charge must be dismissed because a wanton endangerment conviction is warranted only when neither death nor injury result from the defendant's conduct. Appellant asks this court to review the commentary that relies upon the hypothetical situation of a defendant shooting a gun into an occupied building, with no intent to kill or injure, consciously disregarding the risk of death or injury to its occupants. The commentary suggests that if someone is killed, then the charge is murder. If no one is killed or injured, then the charge is wanton endangerment. We have taken this hypothetical question under consideration; however, it is distinguishable. Mr. Port did enter the building where he fired the shots. He aimed his gun at two people and shot, and he also created a dangerous atmosphere where people would be struggling with him to stop the shooting. In fact, in this case there was no physical injury to the other patrons of the diner who struggled with him for the gun. As a result, we do not find that dismissal of the conviction is required.

For the foregoing reasons, the ruling of the Warren Circuit Court is affirmed.

LAMBERT, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

STUMBO, J., files a separate dissenting opinion which LEIBSON, J., joins.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. In my opinion there simply was no evidence from which the jury could *reasonably* conclude that Appellant was sane at the time these crimes were committed.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court stated as follows:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation omitted.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation omitted.] This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
>
> That the *Thompson [v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) ] "no evidence" rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt is readily apparent. "[A] mere modicum of evidence may satisfy a 'no evidence' standard...." [Citation omitted.] Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence, cf. Fed Rul Evid 401—could be deemed a "mere modicum." But it could not seriously be argued that such a "modicum" of evidence could by itself rationally support a conviction beyond a reasonable doubt.

*Id.,* 443 U.S. at 318–320, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574.

Thus the issue to be resolved is whether there exists in this record more than a "mere modicum" of evidence to counter the expert testimony presented of Appellant's insanity. The majority cites evidence that during the shooting Appellant appeared to be in control, that he asked for counsel when arrested, and that he testified his victims were shot because they were the source of his frustration. Is this sufficient to overcome the uncontradicted testimony of two expert witnesses that Appellant was a paranoid schizophrenic and lacked the capacity to appreciate the criminality of his acts or conform his conduct to the law? I do not believe so.

Even when considered in the light most favorable to the Commonwealth, the evidence presented in contradiction to the expert testimony is insufficient to support a conviction beyond a reasonable doubt. I would reverse Appellant's convictions and direct entry of a directed verdict.

Leibson, J., concurs in this dissent. He would also reverse on an additional point. Port intentionally shot two patrons of Stel's Diner. He was charged and convicted for these acts. It was double jeopardy to convict him of wantonly endangering other patrons in the vicinity by the same acts for which he was convicted of murder.