# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 14, 2019
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

FINAL

2018-SC-000118-MR

DATE 4/4/19 Kim Redmon, DC

ROBERT ROGERS                                                    APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.             HONORABLE JOHN L. ATKINS, JUDGE
NO. 16-CR-00516

COMMONWEALTH OF KENTUCKY                                          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Robert Rogers appeals from a judgment of the Christian Circuit Court finding him guilty but mentally ill of two counts of murder and sentencing him to twenty years' imprisonment. Rogers elected to have the trial court sit as the factfinder, that is, without a jury.

Rogers argues that (1) the trial court erroneously found that he was guilty but mentally ill because the evidence presented at trial demonstrated that he was insane, (rather than mentally ill) at the time he committed the charged acts, and he cannot therefore be held criminally responsible for his acts pursuant to KRS[1] 504.020; and (2) that the trial court erred by not

---

[1] Kentucky Revised Statutes.

recusing after expressing bias against him the morning of trial, and by not granting him a new trial based on its failure to recuse.

For the reasons explained below we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rogers had several siblings, including Joanne Rogers; Carolyn Coleman; Ronald Coleman; and Marlow Coleman, who is mentally disabled. Rogers, who was 65 at the time of the killings, has a long history of mental illness dating back to his early twenties, and has had at least thirteen hospitalizations for his mental illness since that time. Rogers has been diagnosed with schizoaffective disorder. Schizoaffective disorder is a mental disorder in which a person experiences a combination of schizophrenia symptoms, such as hallucinations or delusions, and mood disorder symptoms, such as depression or mania.

Because of his long-term mental illness Rogers was prescribed several medications. There was evidence presented at trial that Rogers had not been taking his medications in the time leading up to the killings. Rogers' brother Ronald testified that based upon the way Rogers had been acting before the killings, and his familiarity with how Rogers acted when not taking his medications, he was sure Rogers had not been taking his prescriptions in the days or weeks prior to the crimes. In addition, numerous full and mostly full pill bottles recovered from Rogers' residence after the murders indicated that he was not taking his prescribed medications in the days and weeks leading up to the murders.

2

In January 2016 the siblings' mother died and Carolyn was appointed executor of the estate. In the weeks prior to the murders, Rogers had expressed dissatisfaction concerning Carolyn's handling of her executor duties and had expressed hostility toward Ronald and his wife. Rogers had taken out a restraining order against Carolyn and Ronald and his wife shortly before the murders. Ronald testified that after getting the restraining order Rogers stated to him, "y'all trying to throw me away." Ronald said he believed that this "was the schizophrenia talking," and that Rogers "was out of his head" when he made these statements. Rogers also made statements during this time that he believed that Carolyn and Joanne were trying to harm Marlow, who resided in a group home for intellectually disabled persons.

Shortly prior to the murders, Rogers stated to Ronald and his wife, "Y'all done lied to me, and I'm gonna kill both of y'all." Rogers also made threats against Carolyn during this time. The threats appear to have been related to Carolyn's statement to Rogers that if he did not take his medications she was going to take away the house and car his mother had left him and have him readmitted to Western State Hospital. This resulted in Rogers complaining to Ronald that they needed to get a new executor for their mother's estate because Carolyn was "not doing him right."

At approximately 6:30 a.m. on August 7, 2016, Rogers went to Joanne's residence, where Carolyn was also staying, and stabbed his two sisters to death. Carolyn was able to call 911 before she was killed, and the police responded within minutes. Upon arriving at the residence, the police found

3

Rogers in the home with blood on his clothing. Before and after his arrest, Rogers made comments to the police about killing witches. These comments were apparently about his sisters. However, during this time Rogers was able to comprehend and respond to police commands and make comments such as that his sisters were trying to steal his father's retirement money.

Rogers was indicted for two counts of murder. Because of his history of mental illness, Rogers was sent to Kentucky Psychiatric Treatment Center (KPTC) for what turned out to be an extended 94 day stay. Upon the conclusion of his stay at the facility, Dr. Timothy Allen, a Court Appointed Psychiatrist, issued a report expressing his opinion that Rogers was competent to stand trial but needed to maintain his antipsychotic medications. Dr. Allen also stated that Rogers "lacked the ability to appreciate the criminality of his conduct at the time of the alleged events due to his Schizoaffective Disorder." Dr. Allen testified to that effect as a defense witness at trial.

Following a bench trial, the trial court found Rogers guilty but mentally ill of the murder of his two sisters and made findings from the bench in support of its decision. Having found Rogers guilty but mentally ill, the trial court sentenced Rogers to twenty years' imprisonment. This appeal followed.

## II. THE TRIAL COURT'S FINDING THAT ROGERS WAS NOT INSANE AT THE TIME OF THE CRIMINAL ACTS WAS NOT CLEARLY ERRONEOUS

Rogers contends that the evidence compels a determination that he was insane at the time of the murders and is therefore entitled to an acquittal pursuant to KRS 504.020. However, the trial court was the finder of fact and was free to assess the testimony of the witnesses, both lay and expert, on the

4

issue of insanity. There is ample case law on this point, and we feel it would be helpful to discuss some of it briefly.

In *Brown v. Commonwealth*, 934 S.W.2d 242 (Ky. 1996), where the defendant was found guilty but mentally ill of the murders of his father and brother and of the assaults of his sister and mother, our Court said:

> This Court has long held that **a motion for directed verdict in a case involving an insanity defense would be defeated as long as there was "some evidence" indicating that the defendant was sane at the time of the commission of the crime**. *Tunget v. Commonwealth*, *303 Ky. 834, 198 S.W.2d 785 (1947)*. More recently, we stated that **"where there is any evidence indicative of [a defendant's] sanity, there is presented an issue of fact for a [factfinder's] determination."** *Wiseman v. Commonwealth*, 587 S.W.2d 235, 237 (1979).

*Id.* at 246-47.

In *Biyad v. Commonwealth*, 392 S.W.3d 380 (Ky. 2013), Biyad was found guilty but mentally ill of murdering his four children and attempting to murder his wife. *Id.* at 380. Biyad agreed to a bench trial and presented an insanity defense supported by expert testimony that was ultimately unconvincing to the trial court. *Id.* Biyad was diagnosed with schizophrenia by the defense's expert witness, a psychiatrist. *Id.* at 381. The defense's psychiatrist also gave the opinion that Biyad lacked the substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *Id.* In rebuttal, the Commonwealth's expert, a clinical psychologist, testified Biyad was not suffering from paranoid schizophrenia on the day of the murders

5

and that he saw no signs of psychotic behavior during his personal interviews with him. *Id.*

Biyad presented two interwoven arguments on appeal: that once he presented evidence of his insanity, the burden shifted to the Commonwealth to disprove it, and that the Commonwealth did not meet that burden. *Id.* at 381-82. This Court upheld Biyad's conviction, holding on the latter argument that:

> **[T]he question was whether it would be clearly unreasonable for the trial court, acting as the fact finder by conducting a bench trial, to find against Appellant on the issue of insanity.** The record indicates that the trial court heard testimony from Appellant's wife about his conduct at the time of the crimes, from the Appellant himself, from police officers who conducted the initial interviews, and most importantly rebuttal testimony from a clinical psychologist who testified that in his opinion Appellant could appreciate the criminality of his conduct or conform his conduct to the requirements of law. It is clear that there was sufficient evidence at trial to demonstrate that it was not "clearly unreasonable" for the trial court to find against Appellant on the issue of insanity.

*Id.* at 838 (emphasis added) (internal citations omitted).

Finally, regarding the testimony of expert witnesses, *Wiseman v. Commonwealth*, 587 S.W.2d 235, 237 (Ky. 1979) held:

> [E]ven though all expert witnesses testify favorably for the accused as to his insanity, **where there is any evidence indicative of his sanity, there is presented an issue of fact for [the fact-finder's] determination.** It is not necessary that there be a battle between the experts as to the sanity of the accused. Oftentimes, lay witnesses testifying as to the customary conduct of an accused more nearly reflect his mental capacity than the highsounding names tagged to imaginary self-induced complaints.

*Id.* at 237-38 (emphasis added).

Therefore, the standard by which we must evaluate this case is clear. Regardless of the evidence presented that was indicative of Rogers' being insane at the time of the murders, if there was *any* evidence presented that pointed towards him not being insane during the murders, there was an issue of fact for the trial court's determination. And, so long as the trial court's determination was not clearly erroneous, we must affirm. A finding of fact is clearly erroneous if it is not supported by substantial evidence; that is, evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003).

Rogers contends that the trial court should have found he was insane because of Dr. Allen's report and testimony, other evidence such as being off his medications, his behavior and conduct before the murders, and his frequent references to witches at the time of the killings. However, there was ample evidence that suggested he was sane at the time of the murders. First, regarding his everyday life, he was the payee on his SSI check, had a driver's license, kept insurance on his vehicle, lived independently, and took care of his home. Further, about two weeks prior to the murders Rogers got a restraining order against Carolyn, Ronald, and his wife. The evidence suggested Rogers sought the restraining order because Carolyn had threatened to send him back to a mental hospital if he did not start taking his medications. He also threatened his other siblings several times in the weeks leading up to the murders.

7

On the day of the murders he went to his sisters' house early in the morning when they would presumably be asleep; he parked his vehicle where it would be hidden from view, which was not where he normally parked; he knew Carolyn called 911 and made an effort to clean up the blood before the police arrived; he either turned the lights off or kept them off and did not respond to the police before they entered the house; and when he was confronted by police he cooperated appropriately, invoked his right to silence, later asked to speak to an attorney, and made a claim the attacks were in self-defense.

Finally, on cross-examination Dr. Allen admitted he was unaware of several things he acknowledged would have impacted his conclusions about Rogers' sanity the day of the murders. Specifically, that Carolyn suggested she would put him back in a mental institution and the corresponding restraining order, and that Rogers made an effort to conceal his car from view on the morning of the murders. He also testified he did not ask Rogers about going to the home early in the morning, and admitted that he could have planned to do so deliberately to conceal his presence at the home.

As the fact finder, the trial court is "the sole arbiter of sanity/insanity, so long as there is any evidence relative to the issue which reasonably supports the factfinder's determination." *Cannon v. Commonwealth*, 777 S.W.2d 591, 595 (Ky. 1989). Considering the evidence, we are unable to conclude that the trial court's finding that Rogers was not insane at the time of the killings was clearly erroneous. While Dr. Allen's report and testimony could have supported a finding of insanity, there was countervailing evidence which reasonably

8

supports the trial court's determination that Rogers was not insane at the time he committed the killings.

### III. THE TRIAL COURT'S STATEMENTS REFERRING TO AN OPEN GUILTY PLEA DID NOT REQUIRE RECUSAL

Rogers next contends that his rights under the Due Process Clause of the Fourteenth Amendment were violated when the trial judge failed to recuse himself following a question the judge asked about an open plea agreement the morning of trial. Rogers contends that the question reflected a bias by the judge against him which required recusal, and that he is therefore entitled to a new trial with a new judge or, alternatively, that the case be remanded for hearing on his motion for a new trial before a special judge.

On the morning of trial as the proceedings were getting underway the trial court asked the parties, "if there was any interest in entering an open guilty plea, [because it seems] as though that was basically what the trial would amount to." Rogers did not object to the statement at the time but filed a motion post-trial requesting a new trial arguing the judge should have recused himself for expressing an opinion that Rogers was guilty before trial. Because Rogers failed to make a contemporary objection to the judge's statement, he failed to preserve the error for our review. Our only avenue of review, therefore, would be to review the alleged error as a palpable error. However, "[a]bsent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error

review pursuant to RCr[2] 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). Believing the issue to be preserved, Rogers did not request palpable error review.

The trial judge later explained that the reason for the statement was that he believed the parties had reached an agreement on a disposition for the case except for the sentence but was apparently incorrect. The judge further stated that he routinely asks parties prior to trial if a case can be resolved through a plea, and his statement was simply made in keeping with that practice. The trial court apologized for the misunderstanding and stated that he was not prejudiced towards Rogers. We therefore decline to find the trial court's statements to be an extreme circumstance amounting to a substantial miscarriage of justice and decline to address the alleged error.

## IV. CONCLUSION

For the foregoing reasons the judgment of the Christian Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. All concur.

---

[2] Kentucky Rules of Criminal Procedure.

COUNSEL FOR APPELLANT:

Brandon Neil Jewell,
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear,
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General of Kentucky