CASE 102—INDICTMENT FOR HOMICIDE—FEB. 20.

# Abbott v. Commonwealth.

APPEAL FROM TRIMBLE CIRCUIT COURT.

1. CRIMINAL LAW—HOMICIDE—INSANITY—EVIDENCE.—Persons who are not experts, but who by association and observation have had an opportunity to form an opinion as to the insanity of a person may testify to that opinion, giving also the facts upon which the opinion is based so that the jury may judge for themselves what weight the opinion is entitled to.

2. SAME—EXPERT TESTIMONY.—It is improper to admit the opinion of a witness as an expert upon a hypothetical question unless the facts show that he has given the diseases of the mind such study as to qualify him to speak upon that subject the extent of his learning and experience going alone to his credibility. Nor was it necessary that the witness should himself claim to be an expert.

3. INSANITY—EVIDENCE.—Where the principal issue on the trial of an indictment for homicide was the sanity or insanity of the defendant at the time of the commission of the crime, it was proper to permit the defendant to prove any information which he had received which may have affected his condition of mind or explained his conduct.

4. EVIDENCE—RES INTER ALIOS.—Conversations between other persons not in the presence of the defendant and not communicated to him are not competent.

5. SAME—INSANITY—INSTRUCTIONS.—Where there is evidence, as in this case, from which the jury were warranted in drawing the inference that the defendant was not of sound mind at the time he committed the crime, it was error to refuse to instruct the jury upon the subject of insanity.

6. SAME.—The principal issue being the sanity or insanity of the defendant, and there being evidence tending to support the defense the court should have given to the jury the following instructions: "A. Although the jury may believe from the evidence beyond a reasonable doubt that the defendant shot and killed the deceased, Thomas Craig, yet if they further believe from the evidnce that at the time of the killing the defendant was, of unsound mind, then they should acquit him. B. The law presumes every man sane until the contrary is shown by the evi-

dence; and before the defendant can be excused on the ground
of insanity the jury must believe from the evidence that the
defendant was at the time of the killing without sufficient rea-
son to know what he was doing, or had not sufficient reason to
know right from wrong, or that, as the result of mental un-
soundness, he had not then sufficient will power to govern his
actions by reason of some insane impulse which he could not
resist or control."

J. W. McCAIN, C. D. TERRELL, W. F. AND D. H. PEAK AND JOHN
D. CARROLL FOR THE APPELLANT.

1. On refusal to give insanity instructions:   Brewer v. Com., 11 Ky.,
   L. R., 601; Scott v. Com., 4 Met., 227; Bishop Crim. Law, vol.
   1, 383b, 387 (ed. 1892).
2. On refusal to admit evidence of insanity:   Brown v. Com., 14
   Bush, 398; Massie v. Com., 15 Ky. Law Rep., 562: Cotrell v.
   Com., 13 Ky. Law Rep., 305; Montgomery v. Com., 88 Ky., 509;
   Phelps v. Com., 17 Ky. Law Rep., 706.

CLIFTON J. PRATT, ATTORNEY-GENERAL, FOR APPELLEE.

1. Competency of opinions as evidence of insanity:   Ky. Crim. Law
   & Proc., sec. 975; Underhill on Ev., sec. 188, p. 271; Same, sec.
   97, p. 287.
2. Upon the admissibility of answer to hypothetical questions where
   the witness does not qualify as an expert.   Reese Med. Jur., p.
   19; Underhill on Ev., p. 287.
3. No error was committed by the lower court in refusing to let
   Mrs. Abbott state what was told her by her mother-in-law, that
   Tom Craig had drugged her daughter and thereby accomplished
   her ruin.   This was hearsay evidence and clearly incompetent.
4. It was not an abuse of discretion in the trial court to permit the
   Commonwealth to recall the accused for further cross-exami-
   nation.   Crim Code, sec. 224; Cargill v. Com., 93 Ky., 578; Col-
   lins v. Com., 15 Ky. Law Rep., 691.

   (This case was also argued orally by C. J. PRATT, Attorney-
   General, and J. W. McCAIN.)

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Appellant, Sam S. Abbott, was indicted in the Trimble
Circuit Court for the murder of Thomas Craig; and hav-
ing been found guilty of manslaughter, and his punish-
ment fixed at fifteen years in the penitentiary, he prose-
cutes this appeal.

[ 40 ]

Appellant is a bachelor, thirty-four years of age. He had several brothers and two sisters. The younger sister, named Huston, was seventeen years of age. Appellant was very fond of this sister. In the words of one of the witnesses: "He idolized her. There was nothing she wished for that he would not grant, and there was nothing too hard for him to do for her." He had clothed her, educated her, furnished her with money, and, when away at a distance, had been at pains to gather up presents or pictures for her. His other sister had married Will Craig, a brother of the deceased. Huston was at their house. The deceased, Thomas Craig, had for some time been paying her attention. Appellant lived with his father, W. R. Abbott, about a mile from Will Craig's house.

On Sunday morning, April 16th, of last year, very early, Thomas Craig came to W. R. Abbott's house and told Mrs. Abbott that Huston was very sick at her sister's, and he wanted her to go and bring the doctor. The father went for the doctor, and the mother went immediately to the daughter. Shortly after the mother reached her, and before the doctor arrived, she was delivered of a bastard child. According to the proof, her family had no intimation that she was in this condition until the birth of the child. Appellant knew nothing of it until he met the doctor returning from William Craig's house, and asked about his sister's condition. When told what had occurred, he was like a wild man. His brother gathered him in his arms and held him. That day he was grief-stricken, would not talk to anybody, looked like he was crazy. He wept a great deal; his eyes were red, ate nothing. All that night he was restless; turning, tossing, groaning, murmuring, calling his sister's name, and frequently getting up aimlessly and lying down again.

Sunday evening Thomas Craig and Huston were married by the county judge; but after the ceremony appellant was informed by his brother that Thomas Craig had said they could make him marry her, but that they could not make him live with her. The next morning his mother told his sister-in-law, in his presence, that Thomas Craig had drugged her daughter and thereby accomplished her ruin; that he said the child was not his, and that he was going away. Appellant then went out to the wood pile and lay down on a sled, remaining there some time, crying. He then undertook to dig some post holes, which had been laid off, and pegs driven at points where the holes were to be. He did not dig consecutively, but skipped about, and after working awhile, and without eating any breakfast or dinner, went to a store, not far off, and sat down on the porch. Soon after he sat there, Thomas Craig came up. Appellant said to him, with an oath: "You have ruined my sister. Leave here," and thereupon drew a pistol and shot Craig several times, killing him almost instantly.

After the shooting, a cousin of appellant's got to him as soon as he could and grabbed his pistol. Appellant then turned around to him, and stared at him hard, as though he did not know who had hold of him. Appellant had not seen Craig before that day, and there appears no reason for his expecting the meeting at the store. During the whole day appellant had been moody, saying but little, with tears in his eyes, and his voice such as to attract attention when he talked.

On these facts, which the testimony introduced by him fairly established, he asked the court to instruct the jury that, if he was of unsound mind at the time of the killing, they should acquit him.

He also introduced several witnesses who knew him well, and had seen him that day, and offered to prove by them that he was then crazy; but the court refused to allow the witnesses to testify to their opinion as to his being of unsound mind, and also refused to give any instruction on the question of insanity, which was really the only defense relied on.

It is well settled in this State that persons who are not experts, but by association and observation have had an opportunity to form an opinion as to the sanity of the person, may testify to that opinion; giving, also, the facts upon which the opinion is based, so that the jury may judge for themselves what weight the opinion is entitled to. Insanity is often shown by a flash of the eye, an expression of the face, a movement of the muscles or a number of slight circumstances which, while they may produce a conviction in the mind of the observer, can not, in many cases, be reproduced before the jury as they were exhibited to the eye of the witness. So that, if testimony of this sort were not allowed, great injustice would in many cases be done. The judgment, therefore, of a person's intimate friends and acquaintances as to his soundness or unsoundness of mind is therefore always competent in cases of this character. Brown v. Com., 14 Bush, 398; Phelps v. Com., 17 Ky. L. R., 706, [32 S. W., 470].

The court therefore erred in rejecting this evidence. It also erred in failing to instruct the jury on the plea of insanity. When there is any evidence tending to sustain a plea, the court should not take the question from the jury. While there were in this case some facts proved by the Commonwealth which might have induced a different conclusion, the evidence being conflicting it was peculiarly within the province of the jury to pass upon the

conflict of testimony.   The entire conduct of appellant after he learned of the ruin of his sister, especially after he learned that Thomas Craig had said that the child was not his; that they could make him marry her, but they could not make him live with her; and that he was going to leave, was in keeping with his conduct just after the homicide, when he stared at his relative, without apparent intelligence, and sustains his own testimony that he did not know what he was doing.

The material question in the case being whether appellant was sane or insane at the time he fired the fatal shot, all testimony throwing any light on this question should be admitted.

It was proper, therefore, for appellant to prove any information which he had received which might have induced his condition of mind or explain his conduct. It was competent for him to show that he had been informed that Craig had accomplished the ruin of his sister by drugging her, and that, though he had gone through the form of marriage, he intended to leave.

To a person in the condition of mind appellant is shown to have been in when this information was received by him, it would certainly have a very bad effect, and it would, no doubt, have made more intelligible to the jury his subsequent conduct on that day, before he went to the store.

There was no question of self-defense in the case, or that Craig made any attack on appellant.   The reasons, therefore, which took Craig to the store, were wholly immaterial, as these were unknown to appellant.   For the same reason the conversation between Craig and his wife, not in the presence of appellant, and not communicated to him, should not have been admitted.   The question is simply whether appellant was of sound or unsound mind at

the time he shot Craig. Transactions between Craig and his wife or his brother which were unknown to appellant can throw no light on the issue, and should not have been admitted by the court.

The testimony of Dr. Wright was properly rejected, as it did not appear that he had given the subject of insanity a sufficient study to entitle him to speak as an expert on the hypothetical case put to him.

It is not necessary that the witness should claim to be an expert. Any practicing physician, doing a general practice, who has studied the subject of diseases of the mind, with other forms of diseases, may testify on the hypothetical case, on the ground that, as insanity is a disease, one who is skilled in detecting and treating diseases is competent to give an opinion, the extent of his learning and experience going alone to his credibility. (2 Bishop, Criminal Procedure, section 687.)

The court did not err in refusing to give instruction "A" asked by appellant. But, in addition to the instructions given, he should have given the jury the following:

"(A) Although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed the deceased, Thomas Craig, yet, if they further believe from the evidence that at the time of the killing the defendant was of unsound mind, then they should acquit him.

"(B) The law presumes every man sane until the contrary is shown by the evidence; and, before the defendant can be excused on the ground of insanity, the jury must believe from the evidence that the defendant was at the time of the killing without sufficient reason to know what he was doing, or had not sufficient reason to know right

from wrong, or that, as the result of mental unsoundness, he had not then sufficient will power to govern his actions, by reason of some insane impulse which he could not resist or control."

Judgment reversed, and cause remanded for a new trial, and further proceedings not inconsistent with this opinion.