## Thompson v. Commonwealth.

(Decided October 16, 1913).

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Criminal Law—Evidence.—In a prosecution in which a man of 65 years of age is charged with having carnal knowledge of a girl of fourteen, it was proper to show that prosecutrix's father was dead; and that defendant visited him on his death bed, where there was proof of friendly relations between accused and the family of prosecutrix; as tending to show the probable influence such relations would have on prosecutrix.

2. Criminal Law—Instructions.—In a prosecution for having carnal knowledge of a female under sixteen years of age, where defendant's defense is that of partial insanity, this court is unwilling to depart from the instruction on insanity as laid down in the Abbott case.

3. Criminal Law—Argument of Counsel—New Trial.—Where language used by the Commonwealth's Attorney was undoubtedly improper, but the record shows no request that the court rule on defendant's objection, and it does not appear that the verdict was thereby affected, a new trial will not be granted.

HENRY W. SANDERS, JOHN S. MILLIKEN for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On May 14, 1912, the grand jury returned into the Jefferson Circuit Court, Criminal Division, an indictment charging appellant, J. A. Thompson, with the offense of having carnal knowledge of a female under sixteen years of age. Trial was begun November 11, 1912, and resulted in a verdict finding appellant guilty. A motion for a new trial was overruled, and on March 10,

1913, judgment was entered sentencing appellant to confinement in the penitentiary for a period of from ten to twenty years. From that judgment, this appeal is prosecuted.

It is first contended by appellant that the verdict is contrary to the evidence. An examination of the bill of evidence in the record discloses that appellant is a man of from 63 to 65 years of age; that the prosecutrix, Ruth Evans, was at the time of the offense charged, fourteen years of age. She testified that appellant took her to an assignation house in the city of Louisville five times, having intercourse with her each time. Appellant himself admits having visited the house with her on four occasions; that he sent her in by herself, and he followed after her; that he procured a room for them; that they undressed and went to bed together; that each time he went for the purpose of having intercourse with her; and each time tried to accomplish his purpose, but that she refused each time to permit him to do so.

The fact that he induced this girl to accompany him to a house of this character so many times, admittedly for this purpose, is some evidence that he was successful. The prosecuting witness swears positively that he committed the crime and there is an entire absence of evidence showing that this girl, who had been so intimate with appellant's family, had any motive whatever that would cause her to destroy her own reputation for virtue, and blacken her character for truth, and take from this man who had always been a friend to her and her family, his liberty, by swearing to a falsehood.

Dr. Julia Ingram testified as follows:

"Q. You are a practicing physician?

"A. Yes, sir.

"Q. Doctor, I will ask you if you made an examination of this little girl, Ruth Evans,

"A. I did.

"Q. If so, when and where?

"A. I don't know the exact date; it is on record on the card; it was in the first, I think the first week of May, at the Juvenile Court room; no, the first one was at her own home; I came to the Juvenile Court room and made an appointment then to go to her home and examine her.

"Q. I will ask you if her condition showed that she had had intercourse with a man?

"A. There was sufficient laceration there for that to have taken place.

"Q. Describe to the jury what condition you did find?

"A. There was quite a great deal of inflammation around her parts. There was a bi-lateral laceration of the hymen—decided laceration—considerable irritation just about the parts.

"Q. Was the condition of her parts such as to indicate that she had had intercourse with a man?

"A. It would be possible; nobody could tell.

"Q. You couldn't tell absolutely?

"A. No one could tell.

"Q. They were as they would be if she had had?

"A. Yes, sir."

The jury had the prosecutrix before them; had the opportunity to observe her manner of testifying; they saw and heard appellant testify; and it must be presumed, were capable of forming some estimate of the evidence of each, together with the other evidence adduced on the trial; and we are unwilling to say that they were wrong in their conclusion. In fact, we are of the opinion that the evidence fully warranted them in the conclusion at which they arrived.

It is also insisted that the court erred in admitting incompetent testimony. Pearl Evans, a brother of the prosecutrix, and a witness for the Commonwealth, was examined as follows:

"Q. I will ask you whether or not, Mr. Evans, he was in the habit of coming over to your mother's house and asking for your mother's consent to take your little sister to the picture shows and places?

"A. He came with his grandchildren, yes, and asked mother to let my sister go to the picture shows with him. I suppose fifty times; that was while my father was on his death-bed.

"Q. How long has your father been dead?

"A. My father was dead about two months; my father died in March."

Objected to as irrelevant, incompetent and immaterial; objection overruled, to which defendant excepts."

This question was competent, certainly to show the time alluded to by the witness as to when the appellant was visiting the home of prosecutrix and taking her out to the shows, if for no other purpose. But we think it also competent to show the fact that the child was without the protection of a father, and the opportunities the appellant had to influence her and lead her astray.

The. remainder of the evidence complained of by appellant was that upon cross-examination of the appellant himself, the following questions were asked:

"Q.  You were a friend of her father's?

"A.  Yes, sir.

"Q.  You visited him on his death-bed, didn't you?

'An objection to which first question was sustained; the latter question was not answered at all; and the Commonwealth excepted to the ruling of the court sustaining appellant's objection."

We think this evidence also competent; it shows the friendly relations existing between these families and the probable influence these relations would have over the child.

It is next contended that appellant is insane, and that the court erred in instructing the jury on the question of insanity.  The instruction complained of is as follows:

"The law presumes every man sane until the contrary is shown by evidence, and before the defendant, J. A. Thompson can be excused on the ground of insanity the jury must believe from all the evidence that the defendant was at the time of the commission of either of the offenses referred to, if either was committed, without sufficient reason to know what he was doing; or had not sufficient reason to know right from wrong; or that as a result of mental unsoundness he had not then sufficient will power to govern his actions by reason of an insane impulse which he could not resist or control."

An instruction on insanity in this form was directed by this court to be given in the case of Abbott v. Commonwealth, 107 Ky., 630, and has been approved by us repeatedly since as being in proper form. Counsel for appellant argues that this instruction should be extended in this case by submitting to the jury the question of whether the defendant knew right from wrong with reference to the specific offense charged; contending that a person may know right from wrong generally, but may not know that it is wrong to do the particular act with which he is charged.  Counsel in a very able and exhaustive brief, cites numerous authorities from other States, some of which seem to bear out his contention.  But we are unwilling to adopt such views as the law of this State, or to enlarge upon the instruction under consideration.  We cannot agree with counsel that cases of this kind demand the change suggested by him in the ordinary instruction on insanity.  To say

to the jury that the defendant should not be convicted if his moral perceptions lead him to believe that there is no wrong in violating this statute, would be to open the door to those who have cultivated their reason and judgment in the wrong direction and who, though normal in every other respect, have so warped their judgment as to actually believe it to be no wrong; especially if he should not be the original cause of the downfall of the girl. Under such an instruction it would often be easy to convince a jury that the accused is insane in respect to this particular offense, especially where he is a man of some prominence, and the prosecutrix is shown to be of a weak and passionate nature.

Appellant introduced twelve witnesses who had been well acquainted with him for years, one of them a minister, two of them doctors, others holding important positions, and two of them women, one of whom had lived for four years in the same house with appellant. All testified that appellant was a man of good moral reputation, some say of ''excellent reputation;'' others ''the very best.'' He also introduced physicians who testified that they had examined him; and who said that appellant is a moral degenerate and without power to choose right from wrong in sexual matters. One of these physicians says appellant talks with a good deal of intelligence on most subjects, but does not seem to have any sense at all in sexual matters. It is rather difficult to reconcile this testimony with the actual facts testified to by those who gave appellant an enviable moral reputation; yet, we have no doubt that in this particular case appellant showed himself to be a moral degenerate; and we have no doubt there are many others of the same type who would commit this same offense were it not for the restraint imposed by this statute.

And, finally, it is contended for appellant that a reversal should be granted herein because of misconduct on the part of the Commonwealth's attorney.

It is shown that in argument, the following language was used by him:

''And yet the doctors, I find, in Court Houses, swear anything that they are paid to swear.''

To this appellant's attorney objected, and said that there was no evidence that any doctor was paid to swear anything in this case. The court, without ruling directly on the objection, then said:

"Oh, no, the jury understand that there is no evidence on that subject."

The language used by the attorney for the Commonwealth was undoubtedly improper argument; but as the record does not show that appellant's counsel asked the court to rule directly on his objection, and as we do not think that the verdict was affected thereby, a new trial will not be granted, upon this ground.

Having found no error in the record prejudicial to appellant's substantial rights, the judgment appealed from is affirmed.