**J. B. FAULKNER, Sr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 19, 1968.

John Y. Brown and William H. McCann, Brown, Sledd & McCann, Lexington, Earl F. Ashcraft, Irvine, for appellant.

Robert Matthews, Atty. Gen., Howard E. Trent, Jr., Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

J. B. Faulkner appeals from a judgment sentencing him to a term of ten years and one day in the penitentiary pursuant to a verdict finding him guilty of voluntary manslaughter. We are reversing the judgment because of errors which in cumulative effect deprived the appellant of a fair trial.

Faulkner owned a restaurant, filling station, grocery store, rooming house and rental house, and was building a dwelling, on property on a dead-end road. One Robert Hayes rented the rental house from him. On an afternoon in August 1965 Robert Hayes, his brother Richard Hayes, and one Lonnie Strange drove up in an automobile and stopped in front of the rental house. At that time Faulkner was in the area of the new dwelling under construction. An exchange of gunfire occurred in the course of which Faulkner's shots killed all three of the men in the car. The evidence for the state was that Faulkner initiated the shooting. Faulkner's evidence was that the three men opened fire on him and he was forced to shoot in self-defense with two pistols which he had on his person. A number of alleged eyewitnesses (some of whose presence was denied by others) gave conflicting accounts of the shooting, some supporting the Commonwealth's version and others supporting Faulkner's version. On this appeal Faulk-

ner does not argue that the evidence was insufficient to sustain the conviction, but he complains of numerous alleged errors and prejudicial influences.

On the ground that the time of the making of the alleged threats was not shown with certainty, wherefore the court could not determine whether they were too remote to be relevant, the court directed the jury not to consider certain testimony by Faulkner as to threats made by the deceased men, to kill Faulkner, prior to the day of the shooting. As we read the testimony it is reasonably clear that the threats were made within a week before the day of the shooting; in fact, the witness said so in specific words three times in his testimony.

On the same ground the court refused to admit testimony concerning a shooting incident in the past in which the deceased men had "shot up" Faulkner's store, and as a result of which Faulkner caused warrants to be issued against the men. Again as we read the testimony (in the record by avowal) it is reasonably clear that the previous incident occurred within three years of the day of the fatal shooting.

█ Since, as to both items of evidence, the time was shown with sufficient certainty, and the time was not remote, it was error to exclude the evidence. As to remoteness see Banks v. Commonwealth, 277 Ky. 647, 126 S.W.2d 1122; Hemphill v. Commonwealth, Ky., 379 S.W.2d 223; Gambrel v. Commonwealth, 241 Ky. 39, 43 S.W.2d 335. In fact, in its brief on this appeal, the Commonwealth practically admits that the exclusion of the evidence was error. The Commonwealth argues only that the exclusion was not prejudicial, a point which we shall consider in the conclusion of this opinion.

In addition to the above errors the appellant complains of remarks and actions of the Commonwealth's attorney, and of the trial judge, which he says deprived him of a fair trial.

On numerous occasions the Commonwealth's attorney referred to the killing as a "murder." When the defense counsel was cross-examining a Commonwealth witness in an effort to establish that he had removed some guns from the deceased men's car after the shooting, the Commonwealth's attorney, in an objection, said "That is just a cock and bull story they have fixed up." When a witness for the defense who claimed to have been present at the shooting was testifying, the Commonwealth's attorney interjected comments to the effect that the witness could not have seen certain things because "he was not there to see." On another occasion the Commonwealth's attorney sarcastically commented that a one-eyed witness, who previously had testified, could see what the witness then on the stand said he did not see. When the defense introduced a certain witness, the Commonwealth's attorney, in an "aside" to the jury, said "There is another windbag that won't tell the truth." In cross-examining that witness, the Commonwealth's attorney three times accused him of lying, and was abusive in his treatment of the witness. Later he referred to this witness as "our old friend," obviously in sarcasm. He mentioned, in the course of examining a witness, that the Commonwealth's attorney of Wolfe County (in which county the killing had taken place but from which there had been a change of venue) was "conspicuously absent from this court," and he brought out the fact that the absent attorney had represented Faulkner in the trial of a civil case. In cross-examining a defense witness he asked whether the witness had ever been convicted of a felony, and upon receiving a negative answer he kept repeating the question in a manner calculated to discredit the witness.

The defense counsel made objections in all of the instances above mentioned and on three occasions moved that a mistrial be declared. The latter motions were overruled. Some of the objections were sustained, some were overruled, and some

were ignored. Several times the court admonished counsel on both sides to cease "hollering and bellowing," and requested that they observe "legal ethics." On one occasion the court sharply directed one of the defense attorneys to sit down, with the comment, "We know you are a great big lawyer, and a noted lawyer and a good lawyer, but I can't have you taking charge of this court." The circumstances as indicated by the record did not seem to warrant this treatment.

■ Upon reading the record of the trial of this case the conclusion is inescapable that the Commonwealth's attorney pursued a course of action deliberately calculated to cause the jury's decision to be influenced by improper factors. In this he overstepped the bounds of propriety and fairness which should characterize the conduct of a prosecuting attorney.

As stated by the Supreme Court of the United States in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, and quoted with approval by this court in Edwards v. Commonwealth, 298 Ky. 366, 182 S.W.2d 948 at 951, the prosecuting attorney:

"* * * is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

■ It being obvious early in the trial that the Commonwealth's attorney was embarking upon a course of impropriety, the trial court should have invoked firm measures to bring this course of conduct promptly to a halt, and to cause the trial to proceed in an orderly and fair manner. Occasional weak admonitions were not enough. It is the duty of a trial court, and it has ample power, to command decorous and fair conduct of the trial attorneys. And this power may and should be exercised without a showing of impatience or personal animosity, or the use of critical adjectives.

■ It is our conclusion that the trial of this case was permitted to get out of hand to such an extent as to be unfair, and prejudicially so. The errors mentioned at the outset of this opinion in the exclusion of evidence are part of the overall picture of unfairness, and it is unnecessary for us to decide whether those errors alone would have been prejudicial.

■ We deem it necessary to comment on one further alleged error. In cross-examining one of the Commonwealth's eyewitnesses, defense counsel asked whether the witness had previously been convicted of a felony. Upon receiving an affirmative answer, counsel then asked whether Faulkner had been the prosecuting witness in that conviction. The court would not permit the question to be answered. We think the question was proper as it could have shown animosity or bad feeling on the part of the witness against Faulkner. See Parsley v. Commonwealth, Ky., 306 S.W.2d 284. However, the exclusion in the instant case was not prejudicial because an avowal by the witness showed that Faulkner had not testified against the witness but had been subpoenaed by the witness to testify for him.

The judgment is reversed with directions to grant a new trial.