**Bobby Chester BROWN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 94–SC–804–MR.

Supreme Court of Kentucky.

Sept. 26, 1996.

As Modified on Denial of Rehearing Dec. 19, 1996.

Daniel T. Goyette, Jefferson District Public Defender, of counsel, Frank W. Heft, Jr., Chief Appellate Defender, Leo G. Smith, Assistant District Defender, Jefferson District Public Defender, Louisville, for appellant.

A.B. Chandler, III, Attorney General, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

STUMBO, Justice.

Appellant, Bobby Chester Brown, was found guilty but mentally ill of the murders of his father and brother, and guilty but mentally ill of the first-degree assaults of his mother and sister. On or about July 5, 1985, Appellant attacked members of his family in their home with a hatchet. Appellant was sentenced to a total of 48 years' imprisonment, and now appeals to this Court as a matter of right.

Appellant presents nine arguments on appeal, two of which raise rather troublesome issues for this Court.

The first of these arguments involves the statutory provisions which authorize a guilty but mentally ill verdict ("GBMI")—KRS 504.120, KRS 504.130, KRS 504.140, and KRS 504.150. It is Appellant's contention that the language of this statute, which he asserts violates both the state and federal guarantees of a fair trial and due process, is vague and not rationally designed to advance any legitimate state interest. Appellant also maintains that the GBMI statute prevents a defendant from presenting an insanity defense—a right, which, Appellant asserts, is so well established that it rises to the level of a constitutional guarantee under Sections 2 and 11 of Kentucky's Constitution. Finally, Appellant asserts that a GBMI verdict amounts to cruel and unusual punishment, in contravention of Section 17 of the Kentucky Constitution and the Eighth and Fourteenth Amendments of the U.S. Constitution, in that it holds a person criminally responsible if he or she is insane at the time of the commission of the crime.

In support of his argument, Appellant first relies upon the dissent in *Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510, 513–514 (1990), in which Justices Leibson wrote, with Justice Lambert joining, that the GBMI statute is "essentially meaningless and inherently confusing," *Id.* at 514, and that a GBMI "finding is, for all practical purposes, empty of legal consequences...." *Id.* at 513. While the constitutionality of the GBMI statute was not at issue in *Mitchell*—in fact, the case at bar presents the first time it has been at issue before this Court—Appellant cites to that opinion for historical and background purposes. In addition, Appellant makes reference to scholarly works and newspaper articles which have documented the deleterious impact of the GBMI verdict on the rights of defendants who assert an insanity defense. Appellant also relies upon a note written by a juror in this case which disclosed that a factor inherent in the jury's deliberations was the belief that the defendant would be

afforded special treatment in prison if found GBMI and which questioned whether such a belief was misguided. Appellant maintains that a GBMI verdict confuses the jury so that it does not return a not guilty by reason of insanity ("NGRI") verdict. Appellant adds that the promise of treatment lures the jury into returning a GBMI verdict over a NGRI verdict, but contends that, and contrary to the expectations of proponents of the GBMI statute, such a verdict does not necessarily guarantee that a defendant will receive treatment while in prison. *See, e.g., Mitchell, supra,* at 513 (Leibson, J., dissenting) (emphasis added) ("[D]uring incarceration treatment will be provided *if needed* and *if available.*").

Granted, that while this Court, albeit with a different composition than that which sits today, recommended that the General Assembly enact a GBMI statute, *Gall v. Commonwealth,* Ky., 607 S.W.2d 97, 113 (1980) ("It may be too much to ask of any set of men or women to make a dispassionate assessment of a criminal defendant's mental condition, especially in the setting of a revolting offense he has committed."), it appears that the time may have arrived for this Court to evaluate that statute. Neither are we intimidated by the fact that "[t]o date no case has been found in which an appellate court has held a guilty but mentally ill statute to be unconstitutional." Debra T. Landis, Annotation, *"Guilty But Mentally Ill" Statutes: Validity and Construction,* 71 A.L.R.4th 702, 707 (1989). "[T]he judiciary not only has the authority but is charged with the duty of determining whether a legislative act does conflict with the constitution, and if it does, to declare it ineffective." *Jefferson County v. Jefferson County Fiscal Court,* 273 Ky. 674, 676–677, 117 S.W.2d 918 (1938). Unfortunately, however, this is not the case to determine either the constitutionality of the GBMI statute or the effectiveness of its provisions, as the record in this matter is essentially devoid of any evidence with which to consider such issues.

■ Some newspaper articles—one nearly seven years old—eliciting denouncements of the GBMI verdict by a few state officials, defense attorneys, and others close to the issue do not add that measure of support requisite in order for one to prevail in arguments to this Court. That the record is so lacking is regrettable, especially when considering that, with a bit more inquiry, Appellant could have strengthened his case with more relevant and credible references, especially with regard to the issue of treatment. For instance, 1996 Kentucky House Concurrent Resolution No. 27, styled "A CONCURRENT RESOLUTION to create a task force to study the involuntary commitment and criminal responsibility laws in Kentucky," directly acknowledges that "a lack of adequate resources exists for persons with mental illness or mental retardation within the criminal justice system. . . ." This Resolution, introduced on January 17, 1996, would have created a task force—albeit, the staff services of which were estimated to cost a scant $30,000—to study, among other issues, the effectiveness of the GBMI verdict; however, this Resolution did not merge from committee. It is evidence of this nature which would lead us to believe that the Legislature, with passage of KRS 504.120—.150, has put into place a system lacking in adequate funding, and has taken no positive measures to correct this deficiency, thus falling clearly in contravention of its own mandate for treatment of individuals found to be GBMI. We are indeed gravely troubled by a method of punishment which appears to be nothing more than a charade, cloaked in a verdict, GBMI, which amounts to nothing more than an oxymoronic term of art. Alas, however, we are bound by the record of this case, *Avery v. Davenport,* 300 Ky. 865, 190 S.W.2d 663 (1945); *Hoenig v. Lemaster's Committee,* 268 Ky. 44, 103 S.W.2d 708 (1937), and, as such, the evidence presented herein does not allow us to expound on this issue any further. Therefore, these arguments presented by Appellant, while attracting this Court's attention, do not merit reversal.

■ A related issue advanced by Appellant concerns an instruction on the disposition of the case if a GBMI verdict were to be returned. At trial, defense counsel objected to instructions on the GBMI verdict and to a related dispositional instruction, and argued that if a dispositional instruction were to be

given, it should be that which was tendered by the defense. This objection and tendered instruction were overruled, and the trial court presented the jury with its own dispositional instruction. Procedurally, the trial court's actions herein were not incorrect. Defense counsel's objection at trial and Appellant's argument to this Court center on a misreading of RCr 9.55, as worded at the time of trial. Appellant seeks too narrow an application of that rule in arguing that a defendant has the right to choose for which verdict a dispositional instruction is to be given, and that the trial court cannot give such an instruction for GBMI without the defendant's consent. Rather, RCr 9.55 merely insures that such an instruction will be given if so requested. *Port v. Commonwealth*, Ky., 906 S.W.2d 327 (1995). Thus, Appellant's argument as to this issue must fail.

However, in light of our concern with the constitutionality and effectiveness of the GBMI verdict, it behooves us to speak to the instructions at issue. Appellant's proffered instruction read:

If you find the defendant guilty but mentally ill, the defendant will be sentenced in the same manner as a defendant found guilty but not mentally ill. Treatment may or may not be provided the defendant while incarcerated depending on (1) whether or not the State makes funds available to the Corrections Cabinet to provide such treatment, and (2) whether or not the correctional mental health professional believes treatment of the defendant is necessary at the time he is evaluated at the prison.

The dispositional instruction actually given to the jury stated, in pertinent part:

If the defendant is found guilty but mentally ill under this Instruction, he will receive a sentence for the offense of which he has been found guilty. However, treatment shall be provided to the defendant until those providing the treatment determine that such treatment is no longer necessary or until the expiration of his sentence, whichever occurs first.

While the rather "bare bones" and vague dispositional instruction tendered to the jury

does, in fact, track the language of KRS 504.150, Appellant's proffered instruction appears more accurate. As noted above, it does not seem certain that one found GBMI will actually receive treatment. If this assumption is true, it should be reflected in jury instructions which articulate if treatment is or is not to be given, or if it is to be given only conditionally, as well as what specific type of treatment is to be given. The constitutionality of the GBMI statute depends, at least in part, upon how the jury is instructed in the rendering of such a verdict. However, as we are constrained by the insubstantial record before us, this issue must also await another day.

Appellant next contends that he was entitled to a directed verdict because proof of his insanity was overwhelming. Appellant points out that a psychologist and a psychiatrist retained by the defense, and a psychiatrist called by the Commonwealth, all concluded, based upon Appellant's history, the events in question, and personal interviews with Appellant, that Appellant suffered from a severe mental illness, and, thus, lacked the substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Appellant notes that the testimony of lay witnesses also confirmed this conclusion. Appellant argues that only the psychologist called by the Commonwealth, Dr. Robert Meyer, expressed reservations as to the diagnoses of the other experts, and concluded, instead, that Appellant could conform his conduct to the requirements of the law.

This Court has long held that a motion for a directed verdict in a case involving an insanity defense would be defeated as long as there was "some evidence" indicating that the defendant was sane at the time of the commission of the crime. *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1947). More recently, we stated that "where there is any evidence indicative of [a defendant's] sanity, there is presented an issue of fact for a jury determination." *Wiseman v. Commonwealth*, 587 S.W.2d 235, 237 (1979). The testimony of Dr. Meyer and certain lay witnesses satisfies this standard. *See also Port, supra* at 330; *Ice v. Common-*

*wealth,* 667 S.W.2d 671, 678 (1984) ("It would not be clearly unreasonable for a jury to find against the defendant on the issue of insanity, regardless of the fact that all of the expert testimony was to the contrary."). The standard we adhere to is whether "[t]aking this evidence as a whole, it was not clearly unreasonable for any juror to find the defendant was not insane at the time of the incident." *Port, supra* at 331. Certainly it was not unreasonable herein, and Appellant's argument as to this issue, thus, does not prevail.

■ Appellant also challenges the evaluation offered by Dr. Meyer, emphasizing that this psychologist, unlike the other mental health professionals, never personally interviewed Appellant. However, we have held that an expert may testify as to what a third party said as long as that expert customarily relies upon this type of information in the practice of his or her profession. *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1991); *Buckler v. Commonwealth,* Ky., 541 S.W.2d 935 (1976). Also, while Appellant argues that it was unreasonable for the jury to give Dr. Meyer's testimony any weight in order to overcome Appellant's insanity defense, we point out "that the credibility of every witness presented to testify in a legal proceeding, including expert witnesses, is subject to attack and cross-examination, this being the primary means by which trial counsel can attempt to persuade jurors of the weight or significance to be attached to the testimony of the witnesses...." *Edwards v. Commonwealth,* Ky., 554 S.W.2d 380, 385 (1977); *see also Sanborn v. Commonwealth,* Ky., 892 S.W.2d 542 (1995).

■ Next, Appellant takes issue with the trial court's denial of instructions offered by defense counsel which defined the preponderance of the evidence standard the defense had to meet in proving Appellant's insanity. Appellant argues that failure to give the jury this instruction rendered it questionable whether or not the jury understood the defense's burden of proof in this insanity case, and, as such, violated both federal and state constitutional rights to a fair trial and due process. We conclude, however, that this is a non-issue as counsel was free to argue the preponderance burden to the jury. Furthermore, this Court has reiterated its dissatisfaction with use of the word "preponderance" in jury instructions. *Hardin v. Savageau,* Ky., 906 S.W.2d 356, 358 (1995) (concluding that "use of the term 'preponderance' is redundant and bad practice, and that any attempted definition of 'preponderance' is perilous.") (citing *Ragsdale v. Ezell,* 99 Ky. 236, 35 S.W. 629 (1896)).

Appellant also contends that the trial court erred in not instructing the jury that a GBMI verdict could not be returned if it believed Appellant was insane at the time of the crimes. Appellant speaks of the "inherent conflict" between NGRI and GBMI verdicts and the fear that jurors perceive the GBMI verdict as a compromise to a verdict of NGRI. Appellant asserts that fundamental fairness and due process require that the jury be instructed that it must return a NGRI verdict if it is supported by the evidence and not compromise by returning a GBMI verdict. A review of the record reveals that the jury was so instructed and that the argument advanced herein is merely one of semantics. While the jury instructions might not have contained the precise language sought by Appellant, the effect was nevertheless the same. *See* 1 Cooper *Kentucky Instructions to Juries (Criminal)* Defenses § 11.31, at 626, Comment. ("If the jury finds mental illness or mental retardation which rises to the level of insanity, the defendant is not guilty by reason of insanity. If the jury finds mental illness which does not rise to the level of insanity, the defendant is guilty but mentally ill.").

■ Appellant next argues that the prosecution, during closing arguments, improperly accused defense counsel of unethical conduct, thus violating Appellant's federal and state rights to a fair trial and due process. Appellant notes that this Court has, in the past, reversed a conviction because the prosecutor engaged in conduct "deliberately calculated to cause the jury's decision to be influenced by improper factors ... [and] overstepped the bounds of propriety and fairness which should characterize the conduct of a prosecuting attorney." *Faulkner v. Commonwealth,* Ky., 423 S.W.2d 245, 248 (1968).

However, *Faulkner* involved various improprieties committed by the prosecution. At issue in this matter was merely one brief utterance during the course of closing arguments, after which the trial court properly admonished the jury. In "consider[ing] the Commonwealth's conduct in context and in light of the trial as a whole," *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856, 859 (1993), we see nothing in the statement at issue which would warrant reversal.

■ Appellant next argues that the trial court committed prejudicial error by allowing lay witnesses to express opinions on the ultimate question of Appellant's sanity. Appellant argues that only expert witnesses can express an opinion on the ultimate issue of the accused's sanity. *Cecil v. Commonwealth*, Ky., 888 S.W.2d 669, 675 (1995); *Koester v. Commonwealth*, Ky., 449 S.W.2d 213, 215 (1970); KRE 702. Appellant contends that whether or not a person is insane, as defined by KRS 504.020, is a legal conclusion, and the expression of an opinion on the defendant's sanity is therefore beyond the proper scope of a lay witness' testimony. Appellant is mistaken herein, for this Court has long allowed lay testimony in cases involving the sanity of the defendant. *See, e.g., Abbott v. Commonwealth*, 107 Ky. 624, 628, 55 S.W. 196, 198 (1900) ("It is well settled in this State that persons who are not experts, but by association and observation have had an opportunity to form an opinion as to the sanity of the person, may testify to that opinion...."); *see also Burgess v. Commonwealth*, Ky., 564 S.W.2d 532, 534 (1978) (concluding "that laymen who have had the opportunity by association and observation to form an opinion as to the sanity of a person, may testify to that opinion, giving the facts upon which the opinion is based so the jury may determine the weight to be given to the evidence."). Moreover, in *Cannon v. Commonwealth*, Ky., 777 S.W.2d 591, 593 (1989) (emphasis added), this Court summed up cases similar in nature to the one at bar: "A silver thread that runs through our precedents on the question of insanity is that, if there is any evidence of insanity, *even that of lay witnesses,* the jury, under instructions, is the final arbiter of the ultimate question of the defendant's sanity (or insanity)."

■ Appellant also takes issue with the admission of photographic evidence of the deceased victims. While Appellant concedes that "[a] photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous," *Funk v. Commonwealth*, Ky., 842 S.W.2d 476, 479 (1993), Appellant's point here is that the crime scene photographs were irrelevant and had no probative value, especially in light of the fact that Appellant admitted to killing his father and brother. However, in *Sanders, supra,* a similar case involving an insanity defense, this Court allowed the admission of crime scene photographs. As in the case at bar, the appellant in *Sanders* argued that introduction of crime scene photographs was irrelevant to any real issue in the case as there was no dispute about the fact that the defendant had committed the murders, and that the only real disputed issue was the sanity of the defendant. Nevertheless, we held, in *Sanders,* that "where a defendant has pled not guilty, it is indispensable to the Commonwealth's case to establish that a crime has in fact been committed ... [and] the selected photographs offered into evidence ... constituted relevant and probative evidence of the circumstances of the crime...." *Id.* at 676. We believe that the same holding applies to this matter.

Finally, Appellant argues that the indictment should have been dismissed with prejudice because Appellant's speedy trial rights were violated. Although there was nearly an eight year lapse between the time the crimes were committed and the time Appellant was finally brought to trial, we do not find that Appellant's rights to a speedy trial were violated. Appellant was arrested on July 5, 1985, after having committed the crimes on or about that date. The first indictment against Appellant was dismissed without prejudice on November 18, 1986, upon a finding that Appellant was incompetent to stand trial. An order was entered on November 26, 1986 to involuntarily hospitalize Appellant for 360 days. Similar orders were entered on February 17, 1988 and January 31, 1990. On June 7, 1993, Appellant was reindicted and, on July 9, 1993, it was stipulated that

Appellant was competent to stand trial. A trial date was set for October 5, 1993, but, because of motions filed by either one side, or the other, or both, jury selection did not begin until May 11, 1994.

■■■■ Appellant cites to *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in arguing that speedy trial issues require consolidation of the length of the delay, the reasons for the delay, the assertion of the right, and prejudice. Appellant calculates the time of delay in the instant matter from the point at which the crimes occurred. However, Kentucky case law holds that the determination of length of delay for speedy trial purposes does not include the time when a defendant was not under indictment. *See e.g., Commonwealth v. Miles,* Ky.App., 816 S.W.2d 657, 659 (1991) (quoting *U.S. v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982)) ("[O]nce charges are dismissed, the speedy trial guarantee is no longer applicable because 'with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.' "); *see also Reed v. Commonwealth,* Ky., 738 S.W.2d 818 (1987). Therefore, considering the time between that date when Appellant was reindicted and when Appellant was brought to trial, it does not appear that such a lapse was unreasonable, especially in a case of this type. Moreover, Appellant does not allege any specific incident of prejudice in his brief, but merely makes the blanket assertion that the length of delay is "presumptively prejudicial." Kentucky case law indicates that "[t]he possibility of prejudice alone is not sufficient to support the position that speedy trial rights have been violated." *Preston v. Commonwealth,* Ky.App., 898 S.W.2d 504, 507 (1995).

Therefore, for the reasons stated above, the judgment of conviction is affirmed. We caution, however, that this decision does not put to rest the issues of the constitutionality of the GBMI statute and the content of the instructions—especially with regard to treatment—to be given to the jury in a GBMI case.

STEPHENS, C.J., and BAKER and LAMBERT, JJ., concur.

WINTERSHEIMER, J., concurs in result only and files a separate concurring opinion, in which GRAVES, J., joins.

SCOTT FURKIN, Special Justice, also files a separate concurring opinion.

KING, J., not sitting.

WINTERSHEIMER, Justice, concurring.

I concur only in the result achieved by the majority opinion to the extent that it affirms the judgment of conviction. However, I wish to state my views separately. I certainly do not agree with the language of the majority opinion or with what I believe is the clear implication of it. Our only appellate duty is to review the facts and the law. The majority opinion is almost an engraved invitation to seek RCr 11.42 relief or to challenge the validity of the statute.

This conviction should be affirmed because Brown was not entitled to a directed verdict regarding his insanity defense. KRS 504.130 and the verdict of guilty but mentally ill are clearly constitutional. The instructions by the trial judge pertaining to insanity and the verdict of guilty but mentally ill were sufficient to advise the jury that they must reject the insanity defense in order to find the defendant guilty but mentally ill. In addition, the trial judge correctly instructed the jury regarding the consequences of a verdict of guilty but mentally ill. The other allegations of the appellant are equally without merit.

The judgment of conviction should be affirmed in all respects.

GRAVES, J., joins in this concurring opinion.

SCOTT FURKIN, Special Justice, concurring.

I concur that the record in this case does not support reversal of Appellant's convictions. Nevertheless, Appellant makes some compelling points as to the constitutional infirmities of the guilty but mentally ill ("GBMI") statutes, not the least of which is the concern that jurors are too easily lured

into returning a GBMI verdict—in lieu of an acquittal based on the insanity defense—by the illusory promise of treatment during incarceration.

The trial court cannot be faulted for instructing this jury that Appellant would receive treatment if found GBMI since KRS 504.150(1) does indeed mandate treatment. However, because the legislature has consistently failed to provide adequate funding, the reality is that treatment for those found GBMI is uncertain if not nonexistent. Thus, as the majority opinion notes, the dispositional instruction proffered by Appellant is more accurate; and the constitutionality and effectiveness of the GBMI statutes depend, at least in part, upon how the jury is instructed. As Justice Leibson observed in his dissent in *Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510, 513 (1990), "[w]e cannot expect the jury to render a 'true verdict' if they are misled or confused...."

For this reason, I would hold that in all future cases where it is requested, a dispositional instruction which specifies that treatment will be provided during incarceration only if available and deemed necessary shall be given until such time as the legislature commits adequate resources for treatment of those found GBMI. Perhaps this would ameliorate somewhat the potential inequity of a statutory scheme whose present application is aptly described by the majority opinion as "a method of punishment which appears to be nothing more that a charade, cloaked in a verdict ... which amounts to nothing more than an oxymoronic term of art."