Ishmael POWELL, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–CA–000522–MR.

Court of Appeals of Kentucky.

Oct. 5, 2007.

Euva D. May, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER and VANMETER, Judges; GUIDUGLI,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Ishmael Powell appeals from the Kenton Circuit Court's judgment, sentencing him to thirteen years' imprisonment, after a jury found him guilty of complicity to commit first-degree robbery and being a first-degree persistent felony offender (PFO).[2] Powell argues that the trial court erred by continuing his trial date, thereby violating his right to a speedy trial, and by admitting "investigative hearsay." For the following reasons, we affirm.

---

1. Senior Judge Daniel T. Guidugli, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. The jury recommended that Powell be sentenced to twenty years' imprisonment on the PFO count, in lieu of its recommended sentence of ten years' imprisonment on the robbery count.
However, the Commonwealth subsequently moved that the PFO count be dismissed, and that Powell be sentenced to thirteen years' imprisonment on the robbery count, in exchange for his cooperation and sworn statement regarding a murder investigation. The court sentenced Powell accordingly.

## Speedy Trial

Powell was arrested on January 7, 2005, for being involved with two other assailants in the armed robbery of two victims. Powell was released from custody approximately two and one-half months later pursuant to RCr[3] 5.22 because he had not been indicted; however, he then was indicted on April 15 for two counts of first-degree robbery and/or complicity to commit first-degree robbery. He subsequently also was indicted for being a second-degree PFO.

The court granted Powell's original counsel's June 29 motion to withdraw from the matter. On August 3, with new counsel representing Powell, the matter was set for trial on September 27. A few days before the trial date, Powell moved for a speedy trial. On September 26, the Commonwealth moved for a continuance so it could try the three codefendants jointly. One of Powell's codefendants had just been taken into custody, while Powell's other codefendant had not yet been extradited to Kentucky. The court granted the Commonwealth's motion.

The matter was set for trial on November 8; however, Powell moved to continue the trial date since yet another appointment of new counsel was made on October 24. The matter ultimately went to trial on December 6.

■ Powell argues that the trial court erred by granting the Commonwealth's motion to continue his September 27 trial date, thereby violating his right to a speedy trial. We disagree.

■ To determine whether a defendant's right to a speedy trial has been violated, a court must consider the four factors set forth by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The first factor, the length of the delay, is a triggering mechanism in that there need be no inquiry into the other factors unless the length of delay is "presumptively prejudicial." 407 U.S. at 530, 92 S.Ct. at 2192. The "length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–31, 92 S.Ct. at 2192. The elements which a court must consider to determine whether a delay was presumptively prejudicial include the nature of the charges and the length of the delay. *Dunaway v. Commonwealth,* 60 S.W.3d 563, 569 (Ky.2001).

Here, Powell was indicted along with two other codefendants for the first-degree robbery and/or complicity to commit first-degree robbery of two victims. As such, the charges were serious and complex. *See Dunaway,* 60 S.W.3d at 569 (indictment for three counts of first-degree robbery and one count of PFO "serious and of moderate complexity"); *see also Barker,* 407 U.S. at 531, 92 S.Ct. at 2192 ("delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

With regard to the time element, the Court in *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992), noted that, "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Kentucky courts have held accordingly. *See Gerlaugh v. Commonwealth,* 156 S.W.3d 747, 750 (Ky. 2005) (nine-month delay in prosecution resulting in first-degree robbery conviction not presumptively prejudicial); *Brown v. Commonwealth,* 934 S.W.2d 242, 248–49 (Ky.1996) (eleven-month delay in prosecution resulting in two murder and first-degree assault convictions not presumptively prejudicial); *Soto v. Commonwealth,*

---

**3.** Kentucky Rules of Criminal Procedure.

139 S.W.3d 827, 843–44 (Ky.2004) (slightly less than one-year delay in prosecution resulting in conviction on two murder counts, attempted murder, first-degree wanton endangerment, first-degree burglary, and tampering with physical evidence was on the borderline of being presumptively prejudicial at best; other *Barker* factors considered); *Dunaway*, 60 S.W.3d at 569–70 (thirteen and one-half month delay in prosecution on three counts of first-degree robbery and one count of first-degree PFO presumptively prejudicial; other *Barker* factors considered). While we appreciate that other entities may suggest that trials occur more quickly,[4] these guidelines simply are not the law in Kentucky.

■■■ As to when a defendant's right to a speedy trial arises, a literal reading of the Sixth Amendment suggests that this right "attaches only when a formal criminal charge is instituted and a criminal prosecution begins." *Commonwealth v. Miles*, 816 S.W.2d 657, 659 (Ky.App.1991) (quoting *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982)). The United States Supreme Court has specifically held that "the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused." *Id.* (citing *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971)). The Supreme Court has further explained

that once charges are dismissed, the speedy trial guarantee is no longer applicable because "with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending." It quoted *United States v. Marion*, 404 U.S. 307 at 321, 92 S.Ct. 455 at 463, 30 L.Ed.2d 468, to explain that after charges against a defendant have been dismissed, "a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *MacDonald*, 456 U.S. 1 at 9, 102 S.Ct. 1497 at 1502, 71 L.Ed.2d 696. In *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), the Court determined that "the Speedy Trial Clause's core concern is impairment of liberty ... under the rule of *MacDonald*, when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a Court should not weigh that time towards a claim under the Speedy Trial Clause."

*Miles*, 816 S.W.2d at 659. Here, eleven months lapsed from the time Powell was initially arrested until trial; less than eight months lapsed from the time he was indicted until trial. Regardless of whether his right to a speedy trial attached when he was initially arrested or when he was indicted,[5] even the eleven-month delay be-

---

4. Powell asserts that, *e.g.*, the National Advisory Commission recommends that no more than sixty days pass from arrest to trial and the National District Attorneys Association recommends that no more than three months lapse.

5. As set forth above, the Sixth Amendment's Speedy Trial Clause does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused. Further, under Kentucky law, the time between a defendant's indictment and the indictment's dis-

missal is not counted for speedy trial purposes. For example, the defendant in *Brown* was arrested in July 1985. 934 S.W.2d at 248. The indictment against him was dismissed in November 1986 because he was incompetent to stand trial. Orders involuntarily hospitalizing the defendant were entered in November 1986, February 1988, and January 1990. The defendant was re-indicted in June 1993 and eventually tried in May 1994. *Id.* at 248–49. The court held that the operative time was the time between re-indictment and trial. *Id.* at 249. However, we

tween Powell's initial arrest and trial was not "presumptively prejudicial" given the complexity of this case, and his right to a speedy trial was not violated.

### Investigative Hearsay

Following the robbery, a veteran police officer watched a certain car that he suspected was used by the robbery suspects. The officer testified at trial that a woman who had been walking up and down the street, paying particular attention to the car in question, eventually approached him and told him that she believed the car belonged to her. A second officer also testified that the woman, Kelly Johnson, told him that she believed the car belonged to her. Powell argues that the trial court's failure to sustain his objection to these officers' statements, as being impermissible investigative hearsay, was reversible error. We disagree.

Even if we assume that the officers' testimony was investigative hearsay, *see generally Sanborn v. Commonwealth,* 754 S.W.2d 534, 541 (Ky.1988) (overruled on other grounds, by *Hudson v. Commonwealth,* 202 S.W.3d 17, 22 (Ky.2006)), any error in the admission of the testimony was harmless. RCr 9.24; *see Commonwealth v. McIntosh,* 646 S.W.2d 43, 45 (Ky.1983) (in determining whether an error is harmless or prejudicial, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different"). Kelly Johnson testified at trial that on January 6 at 8 p.m., Powell's codefendant, Cameron Daniels, dropped her off at work and left in her car. When Daniels did not return to pick her up at 2:15 a.m.,

Johnson's coworker took her to look for her car, which third parties had told her was parked near her sister's house. At the request of a police officer who was in the vicinity, Kelly took the police officer to her car. She also told the officer that Cameron Humphrey[6] had borrowed her car earlier. Thus, the officers' testimony was merely cumulative of Johnson's testimony, to which Powell has never objected.

Further, we fail to see how the officers' testimony was prejudicial in light of the other evidence presented at trial. Police arrested Powell shortly after the robbery in the vicinity of its occurrence. Moreover, a codefendant who pled guilty testified at Powell's trial that Powell was his distant cousin whom he had known his entire life. On the night of the robbery, the three codefendants drank together at a bar. On their way home from the bar, the three attempted to rob two men, using weapons. Indeed, Powell had an automatic pistol. Finally, the codefendants' testimony also linked Powell to a shirt found in the vicinity of the robbery.[7] Thus, the officers' testimony was not prejudicial.

The Kenton Circuit Court's judgment is affirmed.

ALL CONCUR.

have been unable to find any Kentucky cases applying this reasoning to cases where, such as here, the defendant is arrested, released without restrictions, and then indicted.

6. Johnson testified that this was Cameron Daniels' family's name.

7. The shirt had the word "dirt" on it. The codefendant testified that Powell's nickname was Dirt.